**Dennis SHARP, Appellant,**

v.

**Verna SHARP, Appellee.**

No. 15758.

Supreme Court of South Dakota.

Argued Nov. 19, 1987.

Decided April 20, 1988.

Rehearing Denied June 2, 1988.

Timothy M. Engel of May, Adam, Gerdes & Thompson, Pierre, for appellant.

Darla Pollman Rogers of Meyer & Rogers, Onida, for appellee.

WUEST, Chief Justice.

Appellant, Dennis Sharp (Sharp) appeals a Department of Social Services (Department) order increasing his monthly child support. We affirm.

Dennis and Verna Sharp were divorced on August 15, 1978. Prior to the divorce, the state made AFDC payments to Verna Sharp for the benefit of the two children. Sharp later reimbursed the state.

Under the judgment and decree of divorce, Sharp was ordered to pay $110 per month per child. He made all such payments. Verna Sharp petitioned the Department for an increase in child support on July 22, 1986. After a hearing, the hearing examiner entered his proposed findings of fact and conclusions of law and proposed an order increasing child support to $520 per month.[1] The Secretary of the Department accepted the decision of the hearing examiner.[2] Sharp appealed the Department's decision to the circuit court, which affirmed the decision of the Department.

Appellant argues the Department lacked subject matter jurisdiction to modify child support. He claims by vesting the Department with the power to modify child support, SDCL §§ 25–7A–5, 25–7A–6, and 25–7A–7 are unconstitutional because they confer a judicial power upon an administrative agency.

SDCL §§ 25–7A–5, 25–7A–6 and 25–7A–7 apply in instances where an obligor owes the obligee for arrearages on unpaid support obligations, where he accrues a support debt to the state for past-due child support that the obligee has assigned to the state, or where he accrues a support debt to the state for public assistance money paid by the state. The Department may determine the accrued support obligation that is due an obligee or the support debt that is owed to the state and establish a monthly payment schedule for those amounts accrued or accruing to the parent. *See* SDCL §§ 25–7A–6, 25–7A–7, 25–7A–11, 25–7A–21. The final orders of the hearing examiner under SDCL 25–7A–6 and the Secretary under SDCL 25–7A–7 have the force and effect of orders or decrees of the circuit court. SDCL 25–7A–10.

In this case, the state made AFDC payments, but appellant reimbursed the state for those amounts. Also, appellant was current with his child support. Thus, these three enforcement statutes did not apply to appellant. Appellant brings his constitutional argument against the wrong provisions, because SDCL §§ 25–7A–5, 25–7A–6 and 25–7A–7 do not grant the administrative power to modify original child support orders. The statute which empowers the Department to modify child support is SDCL 25–7A–22, which states:

> If both parties reside in this state, or if jurisdiction has been assumed by the state, and the support order was entered

---

1. The hearing examiner determined that with two children, Sharp's child support should be 34% of his $1,530.36 net monthly income, a percentage which the examiner felt would be consistent with SDCL 25–7–7.

2. Under SDCL 25–7A–6 the hearing examiner's decision is no longer a "proposed" decision that may be accepted, rejected or modified by the Secretary. *See* SDCL 25–7A–6; 1986 S.D.Laws § 7. Under SDCL 25–7A–7, the Secretary issues the order if no hearing is held to determine accrued or accruing child support.

in this state, an obligor, an obligee or the assignee may file a petition, on forms prescribed by the department, to increase or decrease child support based on a change in circumstances. A petition to change the support awarded in an order entered prior to July 1, 1986, need not show a change in circumstances from the entry of the order. *If a petition is filed, the secretary of social services shall appoint a hearing examiner to hear the matter as soon as practicable after due notice to all parties, at an office of the department nearest the residence of the responding party, and the hearing examiner shall issue a final order granting or denying the request.* The hearing examiner may not determine any issue relating to paternity, custody, or visitation rights. However, if a court of this state has entered an order for support after a contested trial thereon, the hearing examiner shall have the authority to modify said order only upon written permission of both parties. Absent such consent, the matter shall be heard by the court having jurisdiction thereof. However, if an objection to the jurisdiction of the department is not filed at least five work days prior to the date set for the hearing, the parties shall be deemed to have consented to the jurisdiction of the department. An obligor, and obligee, or the secretary may file an action in the circuit court of the county where the hearing was held to enforce an order of the hearing examiner.

SDCL 25-7A-22 grants the Department the power to choose a hearing officer who may enter a final order for modification of child support. This is notable for several reasons. Unlike hearing examiners under SDCL 1-26-18.1, the hearing examiner's decision is apparently not a "proposed" decision but a final order. Unlike the child support hearing officer in many other states, the hearing examiner under 25-7A-22 is not chosen by a judge and there is no judicial ratification requirement. *See* Rubin, *Policy Issues with Quasi-Judicial Hearing Officers in Child Support Proceedings,* 11 State Court Journal (Fall 1987).

The courts have continuing jurisdiction in child support matters under SDCL 25-4-45, but now they apparently share concurrent jurisdiction with an agency on petitions for modification of child support except in cases where there has been a contested court trial on child support. *See* SDCL 25-7A-22. At the same time, however, the Department may still petition the appropriate court for modification of a court order and may maintain any support action as a party in interest. SDCL §§ 25-7A-2, 25-7A-3.

This grant of power to an agency to modify child support seems to be unique to South Dakota. Yet, whatever practical problems exist under this legislative system, in cases challenging constitutionality of statutes we do not sit as judges of the merits of the controversy. Courts are not concerned with the overall merits or wisdom of statutes. The courts become judicially concerned when the statute's constitutionality is questioned.

We refuse to consider the constitutional question at this time. The issue was not brought before the trial court but is raised for the first time on appeal. Moreover, the attorney general was not notified of the pendency of the action as required by statute.

We have consistently held that the constitutionality of a statute cannot be raised for the first time on appeal. *Carr v. Core Industries,* 392 N.W.2d 829 (S.D.1986); *Bayer v. Johnson,* 349 N.W.2d 447 (S.D. 1984); *Mayrose v. Fendrich,* 347 N.W.2d 585 (S.D.1984). For an appellate court to consider an issue and make a decision on an incomplete record on questions raised before it for the first time would, in many instances, result in injustice, and for that reason courts ordinarily decline to review questions raised for the first time in the appellate court.

We must, however, emphasize this is merely a rule of procedure and not a matter of jurisdiction. This court has discretion to disregard this general rule of administration and rule on such constitutional issues when faced with a compelling case.

Under a well recognized exception to the general rule, a court may in its discretion decide to consider a constitutional issue raised for the first time on appeal because the question is a matter of considerable importance to the public policy of the state. This is particularly true when the question raised for the first time is one of substantive law which is not affected by any factual dispute, for under such circumstances the parties may present the issue as thoroughly in the appellate court as it could have been presented below. *See In Interest of Baby Girl K.*, 113 Wis.2d 429, 335 N.W.2d 846 (1983); *Town of South Tuscon v. Board of Sup'rs.* 52 Ariz. 575, 84 P.2d 581 (1938); 4 C.J.S. Appeal & Error, § 4 (1980).

Unfortunately, the issue in this case was not thoroughly presented in the briefs submitted to this court, and this difficulty is compounded by the fact that there was no notice given to the attorney general.[3] The person challenging the constitutionality of a statute must give notice to the attorney general of the pendency of the action. SDCL 15-6-24(c). Ordinarily, this court will not rule on the constitutionality of a statute unless the attorney general has been notified, because when an adjudication of unconstitutionality may seriously affect the general public, it is proper for the attorney general to appear on behalf of the legislature and the people.

Although an appellate court will ordinarily decline to rule on the constitutionality of a statute unless the attorney general has been notified, since the failure to give such notice does not deprive the court of jurisdiction, it may determine the question when it is a matter of considerable public importance which should be promptly resolved. 16 C.J.S., Constitutional Law § 86 (1984). While this is an issue of substantial importance, this is not a matter of existing emergency. Given the situation as it is presented on appeal, we do not reach the issue. The people have a right to present their arguments, and that opportunity is waiting.

Appellant's next argument is that the hearing officer erred in not allowing him a deduction from gross income for expenses incurred in traveling to and from work and for his expenses in supporting his stepson. We disagree.

SDCL 25-7-7 provides there are seven specific deductions from monthly gross income. Deduction six is for "actual business expenses of an employee, incurred for the benefit of his employer, not reimbursed." Deduction seven is for "payments made on other support and maintenance orders." Sharp entered $302.40 under deduction six. He entered no amount under deduction seven, but he made a comment on his financial statement that he provides help for his stepson whenever possible.

Appellant's claimed deduction under deduction six stems from his work related expenses for transportation and meals. He commutes daily and must take his mid-day meal at his place of employment. These are not "business expenses of an employee" because they are not made for the benefit of his employer. Appellant chooses to live in Pierre, South Dakota and commute to his job in Onida, South Dakota. Although the hearing officer did not enter a conclusion of law regarding the applicability of this deduction, we do not believe he erred as a matter of law in not accepting the claimed deduction.

Appellant's claimed deduction under deduction seven stems from his statement that he provides for his stepson when he can. He never indicated any amount that he spends on behalf of his stepson pursuant to a support order. Although the hearing officer did not enter a conclusion of law regarding the applicability of this deduction, we do not believe he erred as a matter of law in not awarding some unknown sum under this deduction.

Under SDCL 1-26-36, a court may reverse or modify a decision of an agency if a party has been prejudiced by administrative "findings, inferences, conclusions, or decisions" that are clearly erroneous,

---

**3.** There may have been a telephonic inquiry to an assistant attorney general, but the record is devoid of any actual notice to the attorney general.

erroneous as a matter of law, or arbitrary, capricious, or characterized by an abuse of discretion. In *Permann v. Dept. of Labor Unemp. Ins. D.*, 411 N.W.2d 113 (S.D.1987) we clarified the scope of review under SDCL 1-26-36. When the issue is a question of fact, the circuit court and, on further appeal, this court, must ascertain whether the administrative agency's findings of fact were clearly erroneous. When the issue is a question of law, the administrative agency's and circuit court's conclusions of law are fully reviewable. *Permann, supra.*

Now, under SDCL 25-7A-22 and SDCL 25-4-45, the Department of Social Services as well as the circuit court may modify child support. Although freedom of discretion is limited under SDCL 25-7-7, the modification may deviate from the legislative schedule if specific findings are made that justify the deviation. SDCL 25-7-7 provides clear guidelines for child support, but it is clear from the statute that child support is still not necessarily a simple application of an accounting schedule that must be followed in every case. When acting as the original forum to a request for modification, the Department and the courts still possess the power to exercise some discretion in modifying child support if specific findings are made under one of the five factors listed in SDCL 25-7-7. Thus, on appeal, the reviewing court may be asked to determine whether there has been an abuse of discretion under SDCL 1-26-36 if an argument was raised in the original proceeding over whether there should or should not be any deviation from the statutory schedule under SDCL 25-7-7.

■ Although the expenses do not fall under allowable deductions from gross income, appellant's expenses for meals and transportation and occasional support of his stepson are "expenses of that parent" under the first factor allowing deviation under SDCL 25-7-7. Therefore the hearing officer could have considered whether, in his opinion, these other financial considerations were such that child support should deviate from the statutory schedule. In this case, however, the abuse of discre-

tion standard does not apply because appellant does not complain that the hearing officer should have considered these expenses as *reasons for deviating from the statutory schedule.* Instead, he argues they should have been used as *allowable deductions from gross income under the statute.* While the distinction at first seems trivial, appellant's argument clearly challenges whether he was entitled to a deduction as a matter of law, and so the standard of review is whether the trial court erred as a matter of law. The abuse of discretion standard does not apply. Appellant was not entitled to the deductions as a matter of law, and the trial court was not erroneous as a matter of law in so concluding.

■ Appellant argues since child support was set by stipulation under the original judgment and decree of divorce pursuant to SDCL 25-7A-17 there was no authority to modify that agreement. We disagree.

SDCL 25-7A-17 states:

An agreement between parents or other responsible persons relieving a party of any duty of support or responsibility or purporting to settle past, present or future support obligations as settlement or prepayment may not act to reduce or terminate any rights of the department of social services, or any support obligee to recover from parents or other responsible persons for support provided, unless the department or any support obligee has consented to the agreement in writing and the agreement has been approved by a court of competent jurisdiction.

It is clear the statute is designed to restrict a party's ability to contract away a duty of support. The statute simply does not apply here. Furthermore, child support may be modified, even when originally based on a stipulation. *Jameson v. Jameson*, 306 N.W.2d 240 (S.D.1981).

Judgment affirmed.

SABERS and MILLER, JJ., concur.

MORGAN, J., concurs specially.

HENDERSON, J., dissents.

MORGAN, Justice (concurring specially).

I concur in the disposition of the substantive issues without comment, but I concur in the disposition of the constitutional issue solely upon the grounds that Appellant failed to notify the Attorney General pursuant to the provisions of SDCL 15–6–24(c), so as to give him an opportunity to intervene with regard to this important issue. Although Appellant attempts to raise the issue under the guise of jurisdiction, which can be raised at any stage of the proceeding, the issue is clearly grounded in the question of constitutionality. By statute, SDCL 23A–32–13, a defendant in a criminal proceedings may raise a constitutional issue for the first time on appeal. By our prior decision in *Bayer v. Johnson*, 349 N.W.2d 447 (S.D.1984), we have held that this court can decide a constitutional issue *sua sponte* where we have jurisdiction on other grounds, where the decision is decisive of the appeal, or when the point is one of law and not dependent on facts that might have been raised below had the point been there raised. *Bayer* is not an invitation to counsel to belatedly raise a constitutional issue at the appellate level in a civil or an administrative appeal.

HENDERSON, Justice (dissenting).

I object to the dejudicialization of the judiciary and the diversion of the flow of domestic cases, requiring trained judicial minds, unto an administrative agency. It is bad justice. *See* P. Carrington, D. Meador & M. Rosenberg, *Justice on Appeal*, 122–23 (1976).

These new statutes, fostered by the flow of federal dollars into the State Treasury, are unconstitutional. This was augmented by successful attempts to make the judiciary of this state, at judicial conferences, a participant in the inauguration of this legislation; I objected to that type of procedure and now voice objection to this legislation which has spawned "mini-judges" within the Department of Social Services. *See Bruning v. Jeffries*, 422 N.W.2d 579, 582

(S.D.1988) (Henderson, J., concurring in result), for viewpoint that this new statutory scheme, usurping a legitimate judicial function, is unconstitutional. I see no necessity of repeating my logic and authorities recited in *Bruning*.

The majority opinion concedes that the powers granted to the Department of Social Services to "modify child support" is unique to this state. With that statement, I certainly agree. This Court has recognized, in the past, that matters of great importance may be viewed on a constitutional basis. *See* Henderson, J., concurrence in result, *id.* at 582. Surely, when the State Legislature attempts to strip away the powers of the courts of this state, it is an important matter.

Jurisdictionally, the Department of Social Services cannot determine the amount of child support obligations. These statutes are in violation of art. II, Division of the Powers of Government, art. V, §§ 1, 3, and 5 thereof, and art. VI, § 20, of the South Dakota Constitution. The Secretary of the Department of Social Services is not a judge. Neither are his appointees. *See* S.D. Const. art. V, § 6.

Upon the members of this Court falls a task of guarding constitutionally prescribed liberties through the tripartite system of government. *When* is a constitution violated (be it state or federal constitution)? *Which* branch of government decides? Unquestionably, it is the prerogative of the courts to decide the "when" and the courts have the power of judicial review. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 179–80, 2 L.Ed. 60, 74 (1803), is our teacher. We should guard that power for, as we are instructed by the canons of judicial ethics, we owe an obligation to maintain an *independent* judiciary. South Dakota Code of Judicial Conduct, Canon 1, SDCL 16–2, appx. We are not in the excited affray of the State Legislature. Nor are we under the influence of federal dollars—and thus dominion of a federal agency—such as an agency of state government

(not a branch of government); example immediately at hand, being this State's Department of Social Services.

This unholy mixture of governmental power, creates a maze of parallel, perpendicular, conflicting, criss-crossing and overlapping jurisdiction. Therefore, I dissent.