**SIOUX FALLS ARGUS LEADER and Associated Press, Plaintiffs,**

v.

**The Honorable Marshall P. YOUNG, Circuit Judge, South Dakota, Defendant.**

No. 17046.

Supreme Court of South Dakota.

Argued March 21, 1990.

Decided May 16, 1990.

M. Bridget Ryan, Asst. Atty. Gen., Pierre, for State of S.D.

Brent A. Wilbur of May, Adam, Gerdes and Thompson, Pierre, amicus curiae.

GILBERTSON, Circuit Judge.

## ISSUE

SHOULD THIS COURT ISSUE A PEREMPTORY WRIT OF MANDAMUS AGAINST THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT WITHIN AND FOR HUGHES COUNTY ON THE GROUNDS THAT THE CIRCUIT COURT DENIED CERTAIN MEDIA THEIR FIRST AMENDMENT AND STATUTORY RIGHTS?

## FACTS AND PROCEDURE

In this action the applicants, Sioux Falls Argus Leader and Associated Press (media) seek a peremptory writ of mandamus from this court directing the circuit court of the Sixth Judicial Circuit within and for Hughes County to rescind the terms of an order for closure issued by that court on March 13, 1990. This dispute is an outgrowth of *In the Matter of Hughes County Action No. JUV. 90-3 et al.*, 452 N.W.2d 128 (S.D.1990) where we upheld the circuit court's decision to close the adjudicatory portion of a juvenile hearing to all media.

The adjudicatory hearing began on the morning of March 14, 1990, at the Stanley County Courthouse, Fort Pierre, South Dakota. When the parties to the action and the media arrived at the courthouse, they were served with a copy of an order which the circuit court entered the previous day on its own motion, without hearing or notice to the state, the juveniles, the witnesses, or the media. This order, entitled "ORDER FOR CLOSURE," said:

> Pursuant to the Order of Closure entered by this Court, and affirmed by the Supreme Court in an opinion filed February 28, 1990, and
>
> IT IS HEREBY ORDERED, pursuant to SDCL 26-8-34, the name, picture, place of residence or identity of any child, parent, guardian, custodian or any

Jon E. Arneson, Sioux Falls, for plaintiffs.

person appearing as a witness in a proceeding being held in the Stanley County Courthouse on March 14 and 15, 1990, shall not be published or broadcasted in any news media or given any other publicity unless specifically permitted by order of this Court, and

IT IS FURTHER ORDERED, that the news media is to remain outside of the Stanley County Courthouse and outside of the enclosure of any police barricade at all times, and

IT IS FURTHER ORDERED that there be no news media allowed inside the Stanley County Courthouse, as well as no video or still cameras, tape recorders or other news gathering materials, and

IT IS FURTHER ORDERED, that any violations of this order shall be punished by contempt of court, and

IT IS FURTHER ORDERED, that if any law enforcement officer observes any violations of this order, that the officer shall detain such person and bring them to the attention of the Court at the convenient time.

Law enforcement apparently enforced this order during the hearing. No members of the media were detained for violations, nor cited for contempt, for violating the order.

At the end of the March 14, 1990, business day, media counsel orally contacted the clerk of this court seeking to FAX an alternative writ of mandamus requiring the circuit court to rescind the order. Since the FAX machine available to the court had closed for the day, counsel was advised an application could be filed at 8:00 a.m. the next day.

On March 15, the media filed a written application alleging the illegality of the circuit court's order because (1) it was made without notice and opportunity to be heard, (2) it is an unconstitutional prior restraint on its face since it attempts to prohibit publication of lawfully obtained information, (3) it resorts to illegal methods of enforcement, and (4) the media has no

plain, speedy and adequate remedy in the course at law.

Upon receipt of the written application on March 15, the Chief Justice polled the other members of the court by telephone at their chambers and residences throughout South Dakota and the alternative writ was granted with a hearing date for March 21, 1990, on whether a peremptory writ should issue.

At the conclusion of the adjudicatory juvenile hearing, the circuit court informed the media that two juveniles had been found delinquent of underage consumption of alcoholic beverages. More serious allegations were not proven beyond a reasonable doubt and the juveniles were acquitted on those charges.

The circuit court was served with a copy of this court's alternative writ of mandamus after the adjudicatory hearing was completed.

Prior to the March 21 hearing before this court, the attorney general filed a motion to dismiss. The attorney general notes that the media's application seeks, in part, a declaration that SDCL 26–8–34 is an unconstitutional prior restraint upon the media's First Amendment right to a free press. The attorney general maintains that this court is without jurisdiction to hear this case because media never complied with the statutory notice requirements of SDCL 15–6 for suit against a state officer and for challenging the constitutionality of a state statute.

## LEGAL ANALYSIS

### 1. THE WRIT OF MANDAMUS

This court has constitutional authority pursuant to S.D. Const. art. V, § 5 and statutory authority granted by SDCL 21–29–1 to issue a writ of mandamus against a circuit court "to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal...." [1] SDCL 21–29–2 re-

---

**1.** In prior cases, this court has been asked to issue a writ of prohibition against a circuit

court. A writ of prohibition is authorized under SDCL 21–30–1 to be issued by this court against

quires that a writ of mandamus must be issued in appropriate cases where "there is not a plain, speedy and adequate remedy, in the ordinary course of law."

The circuit court did not appear to defend the legality of its closure order. The attorney general did intervene, however, to support a jurisdictional challenge to the case. The attorney for one of the juveniles appeared on his client's behalf in support of the circuit court's order. The failure of the circuit court to appear as a party does not result in a default. SDCL 21–29–4 states that a writ of mandamus cannot be granted by default. "The case must be heard by the court, whether the adverse party appear or not." *Id.*

## 2. THIS COURT'S JURISDICTION

Media's application and its oral presentation before this court establish that it seeks both a peremptory writ of mandamus against enforcement of the circuit court's closure order and a declaration that SDCL 26–8–34, the statutory source of the order, is an unconstitutional prior restraint on media's right to publish lawfully obtained information. We examine each claim separately.

Jurisdiction must affirmatively appear from the record. Lack of jurisdiction leaves this court with no alternative but to dismiss the matter. *State v. Phipps*, 406 N.W.2d 146, 150 (S.D.1987).

> An appellate court which lacks jurisdiction of the subject matter cannot acquire jurisdiction by its decisions or otherwise; its proceedings and judgment are absolutely void, and they can have no effect whatever on the proceedings or judgment on the court below.

*Id., citing* 4 C.J.S. *Appeal & Errors* 42 (1957).

■ Media initially attacks the validity of the order for closure on grounds other than constitutional. Ordinarily under SDCL 15–6–4(d)(8), an action against a state officer, such as a circuit court judge, would require service of copies of the summons and complaint on the attorney general. SDCL 15–6–1 states, however, that Chapter 15 applies only to actions in the circuit courts. This case is an original action in the Supreme Court and thus SDCL 15–6–4(d)(8) does not apply.

■ SDCL 21–29–6 controls. It states that the writ of mandamus "must be served in the same manner as a summons in a civil action, except when otherwise expressly directed by order of the court." This court's alternative writ was properly served upon the circuit court as we directed.

Likewise, when the constitutionality of a statute is challenged in circuit court, SDCL 15–6–24(c) requires notification of the attorney general. For the reasons stated above, SDCL 15–6–24(c) does not apply. Moreover, this court recently held in *Sharp v. Sharp*, 422 N.W.2d 443 (S.D.1988) that failure to comply with SDCL 15–6–24(c) is not a defect which denies this court jurisdiction over a constitutional challenge to a statute. *Cf. State v. Dunning*, 11 S.D. 585, 79 N.W. 846 (1899).

## 3. IS THE CIRCUIT COURT'S ORDER FOR CLOSURE MOOT?

■ Whether this action should be dismissed as moot depends upon whether "there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *State ex rel. Johnson v. Mathis Implement*, 325 N.W.2d 58, 59 (S.D.1982) *citing Matter of Silver King Mines, Permit EX–5*, 315 N.W.2d 689, 690 (S.D.1982). Counsel for one of the juveniles argues that no actual controversy exists because the adjudicatory hearing, which is the subject of the requested writ, was completed on March 15, 1990. Counsel therefore concludes that any relief at this point would be meaningless and ineffectual.

In previous cases involving mandamus, this court has followed the same rationale:

a circuit court where the circuit court is "without or in excess" of its jurisdiction. *See general-* *ly South Dakota Bd. of Regents v. Heege,* 428 N.W.2d 535 (S.D.1988).

In the absence of special statutory authority, a writ of mandamus only lies to compel one to do what ought to be done in the discharge of a public duty, and not to undo what is improperly done, even though it may have been done under the color of performance of public duty.

*State ex rel Vig v. Lehman,* 45 S.D. 394, 187 N.W. 720, 721 (1922). *See also Van v. Gunderson,* 55 S.D. 95, 225 N.W. 54 (1929); *Beresford Ind. School Dist. v. Fletcher,* 66 S.D. 500, 287 N.W. 497 (1939); *Landers v. Linn,* 79 S.D. 97, 108 N.W.2d 340 (1961).

■ Portions of the circuit court's order for closure are moot. The media may now freely enter the Stanley County Courthouse and the parking lot barricades are gone. However, the order by its terms is still in effect and will continue to be in effect indefinitely until rescinded by the circuit court. The alternative writ of mandamus offered the circuit court the option of rescinding its order. It chose not to do so. As the media points out, the portion of the order which prohibits media from publishing even lawfully obtained information about the juveniles, parents, guardian, custodian or any person appearing as a witness, is still in effect. Theoretically, historians who choose to write about this event fifty years from now would be subject to possible contempt proceedings under this order. Therefore, we conclude that the order is not moot.[2]

## 4. THE LEGALITY OF THE ORDER FOR CLOSURE.

■ We conclude that the order for closure is invalid and it cannot be upheld. A peremptory writ of mandamus will issue against the circuit court to compel its rescission.

, The order was entered on the court's own motion with no notice to the parties, the witnesses or the media. As we noted in *Associated Press v. Bradshaw,* 410 N.W.2d 577 (S.D.1987), the juveniles, the media, the state and any other party are entitled to notice and a hearing before the circuit court prior to the court making a determination on closure. While the circuit court did hold a hearing on closure which was ultimately affirmed by this court in *In the Matter of Hughes County Action No. JUV. 90-3, supra,* neither the circuit court's findings of fact nor conclusions of law dealt with the extent to which closure would be enforced and the length of the duration of the order. Further, this court's decision *In the Matter of Hughes County Action No. JUV. 90-3, supra,* did not address the issue of what measures were appropriate to insure effective closure.

A second problem is that the order did not end with the completion of the adjudicatory hearing and will continue on indefinitely until rescinded.

Counsel for one of the juveniles argues that such stringent terms were necessary to protect a witness from public embarrassment since she was a minor and the alleged victim of a sex crime. The state does have a compelling interest in protecting minor victims of such crimes from further trauma and embarrassment. *In the Matter of Hughes County Action No. JUV. 90-3, supra,* 452 N.W.2d at 133, *citing Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). However the same stringent terms were equally applied to the other participants in the adjudicatory hearing and were not carefully tailored to limit their effect for the protection of the purported victim.

---

**2.** In other types of cases, under exceptional circumstances, this court has decided a moot question. *Wheeldon v. Madison,* 374 N.W.2d 367 (S.D.1985) *quoting Stanley County School v. Stanley County,* 310 N.W.2d 162 (S.D.1981). To invoke this public interest exception, three criteria must be met: (1) a general public importance; (2) probable future reoccurrence; and (3) probable future mootness. *Id.*

Because the circuit court's order is not moot, we need not consider whether the public interest exception can be made applicable to mandamus where its sole purpose, pursuant to SDCL 21-29-1, is to:

compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board or person.

■ A final problem is that the order violates the statutory requirements for enforcement of contempt. Under the closure order any law enforcement officer who viewed what he believed to be a violation of the order, was required to summarily "detain such person and bring them to the attention of the Court at a convenient time."

■ While interference with a juvenile court order is punishable by contempt pursuant to SDCL 26–7–13, the circuit court's authority is still subject to the general criminal contempt statutes found in SDCL 23A–38.[3] Under the authority granted by SDCL 23A–38–1, the circuit court may summarily punish a direct criminal contempt only if it was seen or heard by the court and if it was committed in the actual presence of the court. All actions constituting contempt which are not in accord with the above requirements are prosecuted in the same manner as a normal criminal charge:

> Direct contempts are usually defined as words spoken or acts committed in the presence of the court or during its intermissions which tend to subvert, embarrass or prevent the administration of justice and may be summarily punished by the presiding judge as he may deem just and necessary. Constructive contempts arise from matters not transpiring in court, but in reference to the failure to comply with the orders and decrees issued by the court in a civil action for the benefit of the opposing party.

**3.** In *Karras v. Gannon*, 345 N.W.2d 854, 856 (S.D.1984) this court reaffirmed its traditional differentiation between civil and criminal contempt:

> If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court. If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is inter-

*Feinup v. Rentto*, 74 S.D. 329, 331–32, 52 N.W.2d 486, 488 (1952). *See also Karras, supra*, 345 N.W.2d at 857 n. 1.

Under SDCL 23A–38–2, the defendant is entitled to a hearing, notice of the charges and the time and place of the hearing, time to prepare a defense, and a jury trial. Defendant would further be entitled to representation by counsel. *In re Oliver*, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); *In re Green*, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); *Holt v. Virginia*, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965).

Pursuant to the order for closure, law enforcement officers were ordered to summarily detain persons they, in their discretion, considered to be guilty of contempt. The violations could be committed outside of the actual presence of the court: in the courthouse parking lot, or even hundreds of miles away from Fort Pierre by the publishing or broadcasting of information in violation of the order. As such, the violations would not be committed in the actual presence of the court and the alleged violators were thus entitled to the protections afforded them by SDCL 23A–38–2 rather than summary incarceration and being brought before the court at a time "convenient" to the officer and the circuit court.

## 5. THE CONSTITUTIONALITY OF SDCL 26–8–34.

In its order for closure the circuit court stated that the order was entered pursuant to SDCL 26–8–34.[4]

> ested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the state alone is interested in the enforcement of the penalty, it being a punishment which operates *in terrorem*, and by that means has a tendency to prevent a repetition of the offense in other similar cases. *State v. Knight*, 3 S.D. 509, 514, 54 N.W. 412, 413, (1893) (emphasis original).

**4.** SDCL 26–8–34 states as follows:

> The name, picture, place of residence or identity of any child, parent, guardian, other custodian, or any person appearing as a witness in proceedings under this chapter shall not be published or broadcast in any news media, nor given any other publicity, unless for good cause it is specifically permitted by order of the court.

While the attorney general is not statutorily entitled to receive notice of an attack on the constitutionality of a statute in an original action ˙commenced in this court, fundamental fairness to the state should allow it reasonable notice and an opportunity to be heard in support of the statute in the same vein that media seeks such an opportunity before a closure order is entered. *Sharp, supra*, 422 N.W.2d at 446. Further, the attorney general is statutorily required by SDCL 1–11–1(1) to represent the state in original actions in this court in "which the state shall be interested as a party." He can fulfill this duty only upon proper notice.

The attorney general was informed of the March 21 hearing before this court only days or hours beforehand. He had no time to develop a factual basis to defend the statute or even prepare a brief in support of the statute. "The people have a right to present their arguments." *Sharp, supra*, 422 N.W.2d at 446.

This court's alternative writ of mandamus, which is the sole basis for allowing this case to proceed in an expedited manner, limits itself to the order for closure and in no way addresses the constitutionality of SDCL 26–8–34.

Because we have disposed of the validity of the order for closure in favor of the media on other grounds, we need not decide the constitutionality of SDCL 26–8–34 in such a questionable manner. We are not unmindful that this court has held in other cases that it does have the authority, despite statutory defects, to "determine the [constitutional] question when it is a matter of considerable public importance which should be promptly resolved." *Sharp, supra*, 422 N.W.2d at 446. We find that this is not such a case. While this is an issue of substantial importance, especially to the media, the adjudicatory hearing is over, the order for closure is rescinded, and therefore "this is not a matter of existing emergency." *Id.* at 446.

Seeking a writ of mandamus directly from this court is not a substitute for an appeal. *Heege, supra.* If SDCL 26–8–34 is indeed to be found unconstitutional, it should be upon a full record and argument and not a summary execution.

## CONCLUSION

A peremptory writ of mandamus will issue against the circuit court commanding it to rescind its order of closure of March 13, 1990.

WUEST, C.J., MORGAN and HENDERSON, JJ., and HERTZ, Circuit Judge, concur.

GILBERTSON, Circuit Judge, for MILLER, J., disqualified.

HERTZ, Circuit Judge, for SABERS, J., disqualified.