Unified Judicial System

 

 
 Courtesy of the State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501 

JO LANDSTROM, 
individually and as guardian ad litem for her minor daughter
Katheryn E. Drenker, and Kara Dee Drenker,
Plaintiffs and Appellees, 
v. 
INEZ L. SHAVER, 
Special Administratrix of the Estate of J. Milton P. Shaver; Jack Devereaux; and Constance J. Drew,
Defendants and Appellants,
and Black Hills Jewelry Manufacturing Co.,
Defendant.
[1996 SD 49] 
South Dakota Supreme Court
Appeal from the Seventh Judicial Circuit, Pennington County, SD
Hon. Jeff W. Davis, Judge #19490 - Motion granted 
Terence R. Quinn, Brad A. Schreiber, Michael P. Reynolds Quinn, Eiesland, Day & Barker, Belle Fourche, SD
Attorneys for Plaintiffs and Appellees. 
Gordon W. Netzorg, J. Nicholas McKeever, Jr., Susan Bernhardt
Netzorg & McKeever, P.C., Englewood, CO
Attorneys for Plaintiffs and Appellees. 
John Simko, James E. Moore Woods, Fuller, Shultz & Smith, Sioux Falls, SD
Attorneys for Defendant and Appellant Shaver. 
John Paul Martin, Petersen, Tews & Squires, Minneapolis, MN
Attorneys for Defendant and Appellant Shaver. 
Michael L. Luce, Timothy M. Gebhart Davenport, Evans, Hurwitz & Smith, Sioux Falls, SD
Attorneys for Defendant and Appellant Devereaux. 
Richard S. Mandelson, Marjorie N. Sloan
Baker & Hostetler, Denver, CO
Attorneys for Defendant and Appellant Devereaux. 
Jean M. Massa, Jensen and Massa, Winner, SD
Attorneys for Defendant and Appellant Drew. 
E.W. Hertz, Ulmer, Hertz & Bertsch, Menno, SD
Attorneys for Defendant and Appellant Drew. 
Mark V. Meierhenry, Danforth, Meierhenry & Meierhenry, Sioux Falls, SD
Attorneys for Defendant and Appellant Drew. 
Considered on Briefs April 18, 1996; Opinion Filed May 1, 1996
Opinion Revised July 12, 1996 
PER CURIAM 
[Â¶1] In these consolidated cases, Landstrom filed a "Motion for Adequate Bond or, Alternatively, to Either Dismiss the Appeals or Vacate the Stay of Execution." We grant the motion and require appellants to file an adequate bond. 
FACTS 
[Â¶2] Inez L. Shaver, Special Administrator of the Estate of J. Milton P. Shaver ("Shaver"), Jack Devereaux ("Devereaux"), and Constance J. Drew ("Drew") each appealed from judgments in favor of Jo Landstrom, individually and as Guardian Ad Litem for her minor daughter Katheryn E. Drenker, and Kara Dee Drenker (collectively referred to as "Landstrom") in the aggregate amount of $27 million. Landstrom, a minority shareholder in Black Hills Jewelry Manufacturing Co. (the "Company"), sued the Company and shareholders Shaver, Devereaux, and Drew for alleged mismanagement of the Company. Shaver, Devereaux and Drew (collectively referred to as the Judgment Debtors) each separately appealed to this Court on the merits. 
[Â¶3] Judgment Debtors sought a stay of execution, and proposed to pledge various assets as security. The trial court approved the form and amount of these "supersedeas bonds" as effective to stay execution of the judgments pursuant to SDCL 15-6-62(g) and 15-26A-25. Landstrom filed a "Motion for Adequate Bond or, Alternatively, to Either Dismiss the Appeals or Vacate the Stay of Execution." She argues the bonds are improper in form and inadequate in amount, and that the Judgment Debtors should be compelled to post proper bonds. If they fail to do so, she asks that either the stay be vacated to allow her to execute on the judgments, or the appeals be dismissed. Landstrom's judgments against the Judgment Debtors and the assets each pledged as security for payment of the respective judgments are as follows. 
The Judgments: 
[Â¶4] Landstrom obtained judgments against Shaver, Devereaux, and Drew as follows: {fn1}  

Shaver is solely responsible for a judgment of $4,000,000.00, together with prejudgment interest of $139,178.03, for a total liability of $4,139,178.03. 
Shaver, Devereaux, and Drew are jointly and severally responsible for a judgment of $14,000,000, together with prejudgment interest of $487,123.74, for a total liability of $14,487,123.74. Although joint, the liability on this judgment was apportioned 40% to Shaver, 30% to Devereaux, and 30% to Drew. 
Shaver, Devereaux, and Drew are equally liable for a judgment directing payment of $8,400,000, with no prejudgment interest, in exchange for Landstrom's shares in the Company. 
Shaver, Devereaux, and Drew are equally liable for payment of Landstrom's costs of $70,471.98. 
All amounts are subject to postjudgment interest. 
The Bonds: 
[Â¶5] The Judgment Debtors each pledged for a supersedeas bond (and a cost bond on appeal) various personal assets, including stock in the Company. None of the undertakings are in the form of a surety bond or a deposit of cash with the circuit court. The form and amount of the pledges are as follows: 

Shaver has pledged most of the assets of the Estate of J. Milton P. Shaver {fn2}  which are in the form of treasury bills, stock accounts, investment accounts, trust accounts, and negotiable securities. Shaver represents the total value of the pledge as of December 31, 1995 to be $14,051,467.01. Her "bond" is in the form of an Affidavit, Amended Pledge, and an Order Approving Amended Pledge/Pledge Bond of Inez L. Shaver. This order requires a copy to be served on the custodians of all pledged assets, and grants a "first lien security interest" in favor of both Landstrom and the Company. Shaver is required to provide quarterly reports of the value of the pledged assets. 
Devereaux has pledged 33,267.9 shares of restricted common stock in the Company valued at $4,200,000, 4,850 shares of stock in American Bank of Loveland, Colorado (which is a closely held corporation) valued at $1,183,400, 25,600 shares of publicly traded stock in First Bank valued at $1,100,800, an investment account of $648,087, and another investment account of $700,000. He represents that the total value of the pledged assets as of January 17, 1996 is $7,996,197. {fn3}  His pledge is in the form of two separate "Supersedeas Bonds," one which simply pledges his stock in the Company and the smaller investment account as a guarantee of payment, and another which grants a first security interest in his stock in First Bank and American Bank, and his larger investment account. He also filed a Notice of Deposit, indicating he has tendered to the circuit court the original stock certificates pledged, Stock Assignments Separate from Certificates, Custody Agreement to the Circuit Court, and an Order Approving Bonds. (His pledge of shares of stock in the Company does not include a waiver of the restriction on the stock.) He has separately pledged 811 shares of stock in American Bank of Loveland, Colorado, valued at $197,884 in favor of the Company. 
Drew has pledged 66,539.8 shares of restricted common stock in the Company, valued at $8,400,000. Drew has executed a waiver of the stock restriction and a conveyance of the total shares pledged to Judge Davis. Her pledge is in the form of a "Supersedeas Bond" in which she guarantees payment of $8,400,000, pledges her shares in the Company, and tenders the original stock certificate, a Waiver of Stock Restriction, a Stock Assignment Separate from Certificate to the Circuit Court, and an Order Approving Bonds. A subsequent Order Directing Ms. Drew's Bond to Include all Judgments and Approval Thereof states that Drew is bonded in the sum of $7,985,766.50 in favor of Landstrom, a sum sufficient to pay all judgments plus postjudgment interest for fifteen months. It also provides that she is bonded in the sum of $400,000 in favor of the Company. 
Both Devereaux and Drew deposited with the Circuit Court their original stock certificates, stock assignments separate from certificate, custody agreement (Devereaux only) and waiver of stock restriction (Drew only). The liability of the individual defendants on the various judgments and the pledges made by each are summarized in the following tables: 

Liability Of Judgment Debtors To Landstrom
(Principal Amounts and Prejudgment Interest)  
Shaver 
Devereaux 
Drew 
TOTALS Legal claim -- 
4,000,000.00 
 
 
$4,139,178.03 Shaver solely liable 
139,178.03 Legal claim -- joint 
5,600,000.00 
4,200,000.00 
4,200,000.00 
$14,487,123.74 & several liability 
194,849.50 
146,137.12 
146,137.12 Equitable claim 
2,800,000.00 
2,800,000.00 
2,800,000.00 
$8,400,000.00 Costs 
23,490.66 
23,490.66 
23,490.66 
$70,471.98 TOTALS 
$12,757,518.19 
$7,169,627.78 
$7,169,627.78 
$27,096,773.75 
Security Pledged by Judgment Debtors as Supersedeas Bonds in Favor of Landstrom  
Shaver 
Devereaux 
Drew 
TOTALS treasury bills 
1,349,935.00 
 
 
$1,349,935.00 trust accounts 
7,383,225.48 
 
 
$7,383,225.48 investment accounts 
5,318,306.53 
1,348,087.00 
 
$6,666,393.53 Company stock 
 
 
 
$12,600,000.00 33,267.9 shares 
 
4,200,000.00 66,539.8 shares 
 
 
8,400,000.00 American Bank stock 
 
1,183,400.00 
 
$1,183,400.00 First Bank stock 
 
1,100,800.00 
 
$1,100,800.00 TOTALS 
$14,051,467.01 
$7,832,287.00 
$8,400,000 
$30,283,754.01 ISSUES 
[Â¶6] Landstrom's motion for adequate bond is based on her assertions that the Judgment Debtors 1) failed to provide either corporate or individual sureties for their appeal bonds, and 2) failed to provide bonds in amounts sufficient to secure their liability on the judgments from which they appealed. The essence of her motion is that the "bonds" provided by the Judgment Debtors are illusory and do not preserve the status quo or secure payment of the judgments she obtained. Her first argument focuses on the prescribed form of an undertaking as provided by the South Dakota Rules of Civil Appellate Procedure. 
[Â¶7] Her second argument, that the amounts of the bonds are insufficient, has several points. Initially, she focuses on the provisions requiring a personal surety to file an affidavit establishing the surety's net worth to be double the amount of the judgment appealed. She also contends the amounts are insufficient because they are "based strictly on defendants' proportionate liability and fail to take into consideration their joint and several liability on $14,487,123.74" which would permit her to collect twice the percentage of fault allocated by the judgment to each party. See SDCL 15-8-15.1. Aside from these arguments, Landstrom contends that the amounts pledged by Shaver {fn4}  and Devereaux are insufficient to secure even their proportionate shares of liability. 
[Â¶8] The response of the Judgment Debtors generally is that the bonds are adequate to preserve the status quo, additional bonding requirements would be punitive in nature, and the cost to obtain a surety bond, whether corporate or individual, would be prohibitive. They contend the bonds need only be in an amount necessary to pay the judgment or portion which is affirmed and that they cannot be compelled to post double the amount of the judgment on the basis that they are jointly and severally liable for as much as twice the percentage allocated to each. They also object to any requirement that each post a $500 cost bond (even though each filed a separate notice of appeal) and each post a bond for the total costs awarded of $70,471.98. 
DECISION 
[Â¶9] Supersedeas bond requirements 
[Â¶10] Supreme Court rules establish the requirements which must be satisfied before an appealing party is entitled to a stay of execution of the judgment pending appeal. SDCL 15-26A-23 through 15-26A-46. "The rules of procedure in the circuit courts, and the rules of appellate procedure relevant to this appeal, are rules promulgated by this Court and, although codified, are not legislative enactments. We are, therefore, uniquely situated to determine the intent and application of our own rules." Sander v. Geib, Elston, Frost Prof. Ass'n, 506 NW2d 107, 121 (SD 1993). South Dakota's rules of appellate procedure presume that an appeal does not stay execution on the judgment appealed: 

An appeal from a judgment or order shall not stay enforcement of proceedings in the circuit court ... unless the appellant executes a supersedeas bond in the amount and form approved by the circuit court or otherwise complies with the provisions of this rule. {fn5}  
SDCL 15-26A-25. See SDCL 15-26A-32 ("When an approved supersedeas bond is filed it shall stay all further proceedings in circuit court ..."). This rule delegates to the circuit court the responsibility to establish the amount and form of the bond or undertaking. However, the circuit court is guided by rules relating to the conditions of the bond on appeal. In this instance, each of the judgments which is the subject of this appeal directs the Judgment Debtors to pay a sum of money. {fn6}  Accordingly, SDCL 15-26A-26 establishes the conditions of the supersedeas bond: 

If the appeal is from a judgment directing the payment of money, the conditions of the bond required by Â§ 15-26A-25 shall be the payment of the judgment or that part of the judgment which is affirmed together with interest thereon from the date of the judgment. 
Cf. Sander, 506 NW2d at 122. Up to this point, the parties generally agree. Their paths part here, both on the form of the bond or undertaking and the meaning of the phrase "payment of the judgment[.]" 
[Â¶11] A. Required Form of Bonds 
[Â¶12] The rules require the appellant to give an "undertaking," and contemplate that such an undertaking will be provided by a corporate surety or by a personal surety, implicitly one other than the appellant. This is set out in the first sentence of SDCL 15-26A-35: 

Except when the undertaking is with a corporate surety, an undertaking upon an appeal shall be of no effect unless it be accompanied by the affidavit of the sureties, in which each surety shall state that he is worth a certain sum mentioned in such affidavit, over and above all his debts and liabilities, in property within this state not by law exempt from execution, and which sum so sworn to by such sureties shall in the aggregate, be double the amount specified in such undertaking. 
Only a corporate or individual surety can provide the required undertaking. The only other option available to an appellant is that, in lieu of the required undertaking with a surety, "a sum of money equal to the amount for which such undertaking is required to be given," may be deposited which has the same effect as making the required undertaking. SDCL 15-26A-41 provides: 

When the appellant is required, under any provisions of this title, to give an undertaking, he may in lieu thereof deposit with the clerk of the court in which the judgment or order appealed from is entered, a sum of money equal to the amount for which such undertaking is required to be given, and in lieu of the service of such undertaking, serve a notice of the making of such deposit. Such deposit and notice shall have the same effect as the service of the required undertaking, and be held to answer the event of the appeal upon the terms prescribed for the undertaking, in lieu of which the same is deposited. 
Reading these two provisions together, first it is apparent that an undertaking must be provided by a corporate or personal surety, not by the appellant himself. Cf. Delzer v. Penn, 534 NW2d 58, 61 (SD 1995) (statutes are to be read together to determine meaning); Scott v. Class, 532 NW2d 399, 404 (SD 1995) (same). Second, if the appellant wishes to avoid the necessity of obtaining such a surety to make the required undertaking, the appellant must deposit with the court the money necessary to satisfy the judgment. However, a deposit of cash is the only circumstance under which the rules contemplate that the appellant may provide personal security for the payment of the judgment. 
[Â¶13] In this case, it appears that the circuit court generally understood the requirements that the Judgment Debtors either provide a corporate or individual surety bond or deposit cash in order to obtain a stay of execution. At the last of several hearings on the bond issue, Judge Davis stated: 

... I said early on in this bonding procedure, as long as by cash or a cash equivalency or sufficient surety bonds that the judgments were covered, that I would allow it. 
It appears that a cash equivalency was the manner in which Judgment Debtors were allowed to satisfy, in part, the undertaking requirements. However, the rules do not allow for a "cash equivalency" deposit in court. 
[Â¶14] The Judgment Debtors contend that the circuit court has complete discretion to approve any form of an undertaking. Their claim is based on the language of SDCL 15-26A-25 which states that the supersedeas bond is to be "in the amount and form approved by the circuit court[.]" {fn7}  This argument must be rejected because the appellate rules clearly limit the exercise of the circuit court's discretion, and permit review and modification by this Court. SDCL 15-26A-35, 15-26A-39, 15-26A-40. 
[Â¶15] Indeed, the circuit court has the responsibility to establish the amount and form of the bond or undertaking necessary to stay execution of the judgment. SDCL 15-26A-25. However, these same rules limit the form of the undertaking to either a corporate or personal surety, or a deposit of a sum of money in lieu of such an undertaking. In this case, none of these provisions has been satisfied. If the approval of the pledges was intended to permit Devereaux and Drew to make the deposits of the stock certificates and related documents (Shaver made no deposit of documents of title) as a sort of deposit in court in lieu of the undertaking, it fails to comply with SDCL 15-26A-41. That rule allows an appellant to avoid the obligation to obtain a surety only if appellant deposits a "sum of money;" it does not allow a deposit of securities, negotiable or otherwise, as a cash equivalency. 
[Â¶16] If the form of the undertaking was approved as a personal surety, it also fails. The Judgment Debtors and the circuit court all misapprehend the nature of a personal surety, and each assumes that the Judgment Debtors are personal sureties on their own individual bonds or pledges. State law, SDCL 56-2-1, defines a surety: 

Suretyship is a contract by which one who at the request of another and for the purpose of securing to him a benefit becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor. 
Further, a surety is similarly defined by BLACK'S LAW DICTIONARY as follows: 

One who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor. One who undertakes to pay money or to do any other act in [the] event that his principal fails therein. A person who is primarily liable for payment of debt or performance of obligation of another... . 
BLACK'S LAW DICTIONARY 1441 (6thEd 1990). An individual appellant cannot, by definition, be a surety on appellant's own appeal bond. Cf. Palmer v. Baker, 45 SD 196, 186 NW 951 (1922). As Landstrom correctly points out, the so-called "bonds" of the Judgment Debtors are personal pledges only and do not involve a surety in any form. 
[Â¶17] A supersedeas writ or stay of execution of judgment is an exception to the general scheme of appellate procedure and may be obtained only upon compliance with the rules. The rules require that an appellant make an undertaking in the form of a corporate or surety bond, or, in lieu of such an undertaking, deposit into court a sum of money in an amount equal to that of the required undertaking. Such a plain reading of the rules acknowledges a procedure established to provide certainty that a judgment could be satisfied if affirmed on appeal. It also obviates the need to consider whether an undertaking may take the form of a pledge of assets whose value might fluctuate (such as publicly traded stock), personal assets (such as a gun collection), assets which might not have any market (such as restricted stock in a closely held corporation), or a security interest in assets. 
[Â¶18] The requirement of a corporate or individual surety or a cash deposit into court provides an objective standard against which a circuit court and this Court may determine if the appellant has satisfied the burden to be entitled to a stay of execution. To hold that the form of these "bonds" is acceptable would be to disregard the purpose of the rule. Indeed, the efforts to define and obtain adequate supersedeas bonds in this case drug on from June 1995 through January 1996 because none of the parties or the court could readily determine whether the forms of security pledged were adequate to secure the judgments. While the Judgment Debtors did provide "bonds" in the form approved by the circuit court, the circuit court was without authority to permit the various personal pledges as a means of satisfying the form with which an undertaking must comply. The various pledges are all invalid and of no effect because they are not in the form of a corporate or personal surety or a deposit of a sum of money in lieu of such surety bonds. SDCL 15-26A-35, 15-26A-41. 
[Â¶19] B. Required amount of bonds 
[Â¶20] Landstrom also argues in her motion that the various amounts of the bonds are inadequate. Initially, she focuses on the provisions requiring a personal surety to file an affidavit establishing the surety's net worth to be double the amount of the judgment appealed. It is plain from the preceding discussion that defendants cannot act as their own personal sureties. Thus, they are not required to file an affidavit stating that they have assets within the state and subject to execution which amount to twice the value of the judgment. 
[Â¶21] The heart of Landstrom's argument is that, because the Judgment Debtors are jointly and severally liable on the legal claims, the amount of the supersedeas bonds should be twice the amount of the judgment on those claims (in the amount of $14,487,123.74) apportioned to each. This argument is based on SDCL 15-8-15.1 which provides: 

If the court enters judgment against any party liable on the basis of joint and several liability, any party who is allocated less than fifty percent of the total fault allocated to all the parties may not be jointly liable for more than twice the percentage of fault allocated to that party. 
On the basis of this statute, Landstrom argues that "the Court should set the amount of each defendant's bond to cover all amounts for which that defendant may be liable upon conclusion of the appeal." {fn8}  
[Â¶22] Our rules addressing the amount of the undertaking provide that the amount is to be approved by the circuit court, SDCL 15-26A-25, and the amount set shall "be payment of the judgment or that part of the judgment which is affirmed together with interest thereon from the date of the judgment." SDCL 15-26A-26. None of the parties cite any cases which would support either a strict reading of the phrase "payment of the judgment" to mean only the proportionate share of the judgment allocated to each individual defendant, or a liberal reading to include all amounts which might be collected from any individual defendant on the total value of the entire judgment. For their part, the Judgment Debtors contend that they would be unable to appeal if required to pledge an amount equal to that which Landstrom is entitled to collect from them; they assert that she is using the bonding requirements as a sword to prevent review of the merits of their appeal. Their claim is overstated. Even if they are unable to satisfy the requirements to obtain a supersedeas writ, they are still entitled to appeal; they would only be denied the privilege of staying the execution of the judgment during the pendency of the appeal. See SDCL 15-26A-25, 15-26A-32. 
[Â¶23] The rules of appellate procedure provide that the amount of the bond for a money judgment "shall be the payment of the judgment." The provisions of SDCL 15-8-15.1 relating to liability of joint tortfeasors are a statutory enactment of the legislature which is directed to the collection of judgments. That statute allows a judgment creditor to collect from a joint tortfeasor an amount in excess of the liability assigned in the judgment, and it does not affect the amount of the judgment itself. In contrast, our rules relating to the amount of the supersedeas bond plainly and expressly provide that the amount set shall be payment of the judgment only; they do not contemplate a requirement that the bond cover the amount potentially collectible against a joint tortfeasor which the legislature has provided may be greater. 
[Â¶24] There can be no more plain language than that of SDCL 15-26A-26: " ... the conditions of the bond shall be the payment of the judgment[.]" (Emphasis added.) Consequently, we must reject Landstrom's suggestion that the Judgment Debtors should be required to provide bonds for the total amount she could potentially collect against each one of them. The amount of the bonds which each Judgment Debtor must provide to be entitled to a stay of execution of the judgment is the total amount for which each is proportionately liable according to the terms of the judgments, together with interest. Based on our conclusion that the form of the "bonds" is invalid and the necessity of an order directing the proper form and amount of the supersedeas bonds, it is unnecessary to consider Landstrom's claim that the amounts pledged by Shaver and Devereaux in those bonds are insufficient to secure even their proportionate shares of liability. 
[Â¶25] C. Appropriate remedy 
[Â¶26] The "bonds" which each of the Judgment Debtors executed are invalid and cannot operate to stay the execution of the judgments. We recognize that the bonds were provided pursuant to the approval of the circuit court and, although the order was improvidently made, the Judgment Debtors should be afforded an opportunity to provide adequate security. Thus, each of the Judgment Debtors shall provide an undertaking with a corporate or individual surety meeting the requirements of SDCL 15-26A-26 and 15-26A-35 (including affidavits from any individual sureties) or, in lieu thereof, make a deposit of cash with the clerk of the circuit court, pursuant to SDCL 15-26A-41. See SDCL 15-26A-40. {fn9}  
[Â¶27] The Judgment Debtors are each directed to obtain such surety bonds, or make such cash deposits, in the following amounts: 



 
Shaver 
Devereaux 
Drew Landstrom Judgments 
 
 Legal Claims 
 
 principal & prejudgment interest 
$9,934,027.53 
$ 4,346,137.20 
$ 4,346,137.20 postjudgment interest {fn10}  
1,986,805.51 
869,227.44 
869,227.44 Equitable Claims principal 
2,800,000.00 
2,800,000.00 
2,800,000.00 postjudgment interest {fn11}  
466,666.67 
466,666.67 
466,666.67 Costs principal 
23,490.66 
23,490.66 
23,490.66 postjudgment interest {fn12}  
3,523.60 
3,523.60 
3,523.60 Company Judgment principal & prejudgment interest 
198,934.27 
198,934.27 
198,934.27 postjudgment interest {fn13}  
49,733.56 
49,733.56 
49,733.56 Cost Bond 
500.00 
500.00 
500.00 TOTAL AMOUNT OF SUPERSEDEAS BOND 
$15,463,681.80 
$ 8,758,213.40 
$ 8,758,213.40 
[28Â¶] Nothing in this opinion shall be construed to prohibit Shaver, Devereaux, and Drew from satisfying the obligation to obtain a supersedeas bond by jointly obtaining a single bond in the aggregate amount of $32,980,108.60. In the event that Shaver, Devereaux, or Drew fails to obtain such bonds or make such a cash deposit within 45 days of the filing of the Order Granting Motion for Adequate Bond, and fails to file with this Court proof of compliance with the Order, the stay of execution as to such defaulting party or parties shall be automatically vacated. 
[Â¶29] MILLER, Chief Justice, and SABERS, KONENKAMP, and GILBERTSON, Justices, participating. 
[Â¶30] AMUNDSON, Justice, disqualified. 

Footnotes 
 fn1. This does not include the judgment and prejudgment interest of $596,802.82 the Company has obtained jointly and severally against the Judgment Debtors. This sum is also subject to postjudgment interest. 
 fn2. J. Milton P. Shaver died after the commencement of this suit. The probate of his estate is currently pending and remains subject to judicial supervision by Circuit Court Judge Jeff W. Davis, who is the trial judge in this case. 
 fn3. Based on the information presented in Devereaux' "Supersedeas Bonds" and related documents, the value totals only $7,832,287. A discrepancy also exists in the value he places on the securities he has pledged in his second bond. He claims the value to be $3,172,150, while the total of the amounts documented is $2,984,200. The figures used here are taken from the documents filed on July 10, 1995 and January 17, 1996, including the Notice of Deposit, Supersedeas Bonds, Stock Assignments Separate From Certificates, Stock Certificates, and Custody Agreement. Settled Record at 4981-4986, 6802-6840. 
 fn4. Landstrom's argument that the amount of Shaver's bond is inadequate indicates that Shaver has pledged assets in the amount of $13,801,467. The figure listed in the table above indicates the amount is $14,051,467.01. It appears that Landstrom has used the amount Shaver originally pledged in July, 1995, and overlooked the amended pledge which increased the value over the $14 million mark. This difference does not alter her argument, however, as she contends that Shaver should be bonded in the amount of $14,549,369. 
 fn5. Some of the Judgment Debtors contend that a supersedeas bond might not even be required to stay execution of the judgment. They base this claim on the last clause of this rule which provides, " ... or otherwise complies with the provisions of this rule." However, a fair reading of Supreme Court Rule 79-1, which is the source of this section, indicates that this clause refers to other provisions adopted by Rule 79-1 in which a monetary bond is not required, such as where the judgment appealed directs the delivery or execution of documents or where a public agency or officer takes an appeal from an adverse judgment. See SDCL 15-26A-27, 15-26A-29, 15-26A-38. 
 fn6. Judgment Debtors contend that the judgment on the equitable claim which requires them to buy out Landstrom's shares of stock in the Company for the sum of $8.4 million is not technically a money judgment because it involves a transfer of stock. However, it is clear that the portion of the judgment which they appeal is the part directing the payment of money which clearly falls within the express language of SDCL 15-26A-26. 
 fn7. The Judgment Debtors also contend that a supersedeas bond is not the only way in which to obtain a stay of execution. They rely on authority construing Rule 62 of the Federal Rules of Civil Procedure, and urge the Court to allow their "bonds" to take the forms allowed by the circuit court. However, their argument is misplaced because Rule 62 (and our version at SDCL 15-6-62) applies to a stay in the trial court and does not apply to a stay pending appeal to this Court. Cf. Sioux Falls Argus Leader v. Young, 455 NW2d 864, 867 (SD 1990) (SDCL Ch. 15-6 applies only to actions in circuit courts and does not apply to original action in Supreme Court). While the purpose of both sets of rules may be to preserve the status quo and the ability of the judgment holder to execute on the judgment if it is affirmed, the procedures are clearly distinct. 
 fn8. Under her theory, Landstrom claims the total bond required, including postjudgment interest for 15 months, should be as follows: 

Shaver ......... $21,474,139.68 
Devereaux ...... 13,151,670.04 
Drew ............ 13,151,670.04 
 fn9. This rule states: 

The Supreme Court, upon satisfactory proof that any surety to an undertaking given under this title has become insolvent, or that his circumstances have become so precarious that there is reason to apprehend that the undertaking is insufficient security, may in its discretion require the appellant to file and serve a new undertaking, with such sureties and in such time as shall be prescribed, and that in default thereof the appeal shall be dismissed or the stay of proceedings vacated, and the execution or performance of the judgment or order be allowed to be enforced without further delay. 
It could be argued that the authority described here relates only to circumstances in which a surety has been provided, whether corporate or personal, and has been found to be inadequate. It is, however, illogical to conclude that such authority does not extend to this case where the entire undertaking is insufficient for the very reason that it does not provide any surety whatsoever. 
 fn10. The postjudgment interest on Landstrom's judgments is calculated based on an annual rate of ten percent. SDCL 54-3-16(2), 54-3-5.1. The interest is the sum of ten percent interest per year for two years, based on the assumption that two years will lapse between the date the partial judgment on legal claims was filed, June 22, 1995, and the decision on the merits. Although most appeals will be completed in a much shorter time period, given the delay in establishing the bonds, the briefing schedule, and the complexity of the issues involved, two years was used for the applicable period during which postjudgment interest will accrue. 
 fn11. Postjudgment interest on the equitable claims is calculated at ten percent per year for one year and eight months. SDCL 54-3-16(2), 54-3-5. This is the period of time elapsing from the date this judgment was filed on October 25, 1995, through June 22, 1997. 
 fn12. Postjudgment interest on the costs is calculated at ten percent per year for one year and six months. SDCL 54-3-16(2), 54-3-5. This is the period of time elapsing from the date this judgment was filed on December 28, 1995, through June 22, 1997. 
 fn13. Postjudgment interest on the Company's judgment is calculated at the rate of fifteen percent per year for one year and eight months. SDCL 54-3-16(6), 54-3-5. This is the period of time elapsing from the date this judgment was filed on October 25, 1995, through June 22, 1997.