2003 SD 142

**ESTATE OF Brian E. WATSON.**

**No. 22662.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 2003.

Decided Dec. 10, 2003.

Robert A. Haivala of Haivala Law Firm, Sturgis, South Dakota, Attorney for appellant, Calvin Watson.

Veronica L. Duffy of Duffy & Duffy, Rapid City, South Dakota, Attorney for appellee, Estate of Brian E. Watson.

GILBERTSON, Chief Justice.

[¶ 1.] On September 18, 2001, Brian Watson (Brian) was killed when a vehicle struck him while he was helping a motorist change a tire by the side of the road. Eventually, Brian's estate reached a wrongful death settlement with the driver of the vehicle involved in the accident. Upon petition of Joan Watson (Joan), Brian's mother, a circuit court undertook the task of equitably dividing the settlement between Joan and Calvin Watson (Calvin), Brian's father. The circuit court found Joan had a reasonable expectation of support from Brian but Calvin, with whom Brian had no meaningful relationship through much of his life, could not claim any reasonable expectation of support from Brian. Therefore, the circuit court awarded $54,956.81 to Joan and $1 to Calvin. Calvin appeals this apportionment of the wrongful death settlement. After thorough review of the record, we cannot say the circuit court abused its discretion, and we affirm.

### FACTS AND PROCEDURE

[¶ 2.] On September 18, 2001, Brian was killed when a vehicle struck him while he was helping a motorist change a tire by the side of the road. At the time of his death, Brian was twenty-five years old, unmarried, and without children. Brian was survived by his parents, Calvin and Joan, who had been divorced since Brian was thirteen years old.

[¶ 3.] The youngest of four brothers, Brian spent the first half of his life growing up in Florida. Because of his dyslexia, Brian struggled in school, and, unfortunately, his home life was often traumatic as well. The marriage between Calvin and Joan was rocky at best and often marred by Calvin's physical and verbal abuse of both Joan and the children. Finally, in July 1989, Joan obtained a divorce from Calvin. Pursuant to the divorce decree, a Florida court granted Joan full custody of Brian, the only minor child, and allowed Calvin rights of visitation.

[¶ 4.] After the divorce, Calvin exercised his rights of visitation with Brian from July 1989 until December 1991. In the following six months, however, Calvin failed to exercise any visitation rights with his son. In June 1992, after providing notice to both Calvin and the Florida court which had granted the divorce, Joan and Brian moved to Sturgis, South Dakota. Joan had relatives in the Sturgis area and believed Brian would receive a better education in South Dakota. Calvin did not contest the move. Before leaving, Joan provided Calvin with the address of Joan's sister in Sturgis, pending Joan's search for a permanent address.

[¶ 5.] Subsequent to Joan's and Brian's relocation to South Dakota, the relationship between Brian and his father was almost non-existent. In December 1992, Calvin mailed a birthday card and Christmas card to Brian. Both cards contained checks drawn on a closed bank account. The record indicates that over the next few years Calvin sent four more cards to Brian, but because of an incorrect address, the cards were returned to Calvin. Calvin also made two telephone calls to South Dakota—one to Joan's sister and one to Brian's high school. In these conversations, however, Calvin made no attempt to speak with Brian nor did he inquire about Brian's well-being. Outside of the six

cards, Calvin made no effort to establish a relationship with Brian over the last twelve years of his life.

[¶ 6.] Despite his learning disability, Brian graduated from high school in 1994. After his graduation, Brian and his mother traveled to Florida for a vacation. At the time of the trip, Brian was eighteen years old. During the trip, in response to direct questioning from Joan, Brian expressed no interest in contacting his father while they were in Florida. In fact, Brian never made any attempt to contact Calvin over the seven years of his adult life.

[¶ 7.] Brian lived with his mother, Joan, for his entire life except for a brief period of vocational schooling. After becoming an adult, Brian financially supported his mother and claimed her as a dependent on his 2000 federal income tax return. Calvin, on the other hand, was unable to produce any evidence Brian ever supported him, financial or otherwise.

[¶ 8.] Following the unfortunate accident which claimed Brian's life, a circuit court appointed Joan special administrator of Brian's estate. As special administrator, Joan equally divided the proceeds of a $10,000 wrongful death policy between herself and Calvin. Joan also successfully pursued a wrongful death claim against the driver of the vehicle that struck Brian. After payment of attorney's fees and funeral expenses, only $54,957.81 of the settlement remained to be distributed to Brian's statutory wrongful death beneficiaries. The circuit court found Joan had a reasonable expectation of support from Brian but Calvin did not, and it granted Joan $54,956.81 and Calvin $1. Calvin appeals the circuit court's apportionment of the wrongful death settlement. The sole issue of our review is:

Whether the trial court abused its discretion in determining the "fair and eq-

uitable" division of the wrongful death proceeds as between Calvin and Joan. We affirm.

## STANDARD OF REVIEW

[¶ 9.] We review the circuit court's findings of fact under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (citing *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204). Under this standard, we will only reverse when "we are left with a definite and firm conviction that a mistake has been made" after a thorough review of the evidence. *Id.* We review conclusions of law under the de novo standard without deference to the circuit court. *Id.*

[¶ 10.] We will not reverse a circuit court's division of property "unless it clearly appears the trial court abused its discretion." *Divich v. Divich*, 2003 SD 73, ¶ 7, 665 N.W.2d 109, 112 (citing *Kanta v. Kanta*, 479 N.W.2d 505, 507 (S.D.1991)). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.*

## ANALYSIS AND DECISION

[¶ 11.] **Whether the trial court abused its discretion in determining the "fair and equitable" division of the wrongful death proceeds as between Calvin and Joan.**

[¶ 12.] After both Calvin and Joan presented evidence and testified under oath, the circuit court made its decision to award Calvin only $1 out of the wrongful death settlement. Calvin contends this apportionment is inequitable and, therefore, this Court should find that the circuit court abused its discretion in dividing the settlement. Under the facts of this case,

however, we believe the circuit court did not abuse its discretion in awarding Calvin $1 of the wrongful death settlement.

[¶ 13.] Here, the trial court based its division of the settlement on its findings of fact and guiding principles of South Dakota law. According to SDCL 21–5–5 "[e]very action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents ... of the person whose death shall be so caused." Thus, both Joan and Calvin were proper beneficiaries according to the statute. Under SDCL 21–5–8, a wrongful death settlement "shall be apportioned among the beneficiaries ... in such manner as shall be *fair* and *equitable,* having reference to the age and condition of such beneficiaries." (emphasis added).

[¶ 14.] SDCL 21–5–7 provides "[i]n every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action shall be brought." *See Halvorsen v. Dunlap,* 495 F.2d 817, 819 (8th Cir.1974) (discussing the history of South Dakota's wrongful death statutes and recognizing beneficiaries may recover for pecuniary loss). As we acknowledged in *Zoss v. Dakota Truck Underwriters:*

> [P]ecuniary injury encompasses more than strictly economic losses in that it includes 'the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection,' but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death.

1999 SD 37, ¶ 11, 590 N.W.2d 911, 913–14 (quoting *Sander v. Geib, Elston, Frost Prof'l Ass'n,* 506 N.W.2d 107, 119 (S.D. 1993)).

[¶ 15.] When an adult child dies, we have held there is no presumption "a parent has suffered pecuniary loss ... but the parent is entitled to prove ... that the adult child had the willingness and also the ability to furnish support for his parent." *Gilbert v. Root,* 294 N.W.2d 431, 432 (S.D. 1980) (citing *Hodkinson v. Parker,* 70 S.D. 272, 16 N.W.2d 924 (1944)). We have also held a parent may recover if the parent can show he or she might reasonably have expected support from the child if the child had lived. *Id.; Halvorsen,* 495 F.2d at 822. Thus, under our statutory scheme, it is clear that a child's support for his or her parents may be a major factor in determining the award of a wrongful death action.

[¶ 16.] Although the present controversy involves a fair and equitable division of a wrongful death settlement, it was entirely proper for the circuit court to look to the South Dakota wrongful death statutory scheme for guidance. The circuit court concluded Joan had a reasonable expectation of support from Brian, and the facts wholeheartedly support this conclusion. At the time of his death, Brian lived with his mother just as he had almost his entire life, save a brief period of attendance at a vocational school. Despite his meager earnings, Brian supported his mother after becoming an adult and even claimed her as a dependent on the last tax return he filed with the Internal Revenue Service. On the other hand, Calvin was unable to offer any evidence of Brian's support. In fact, the record supports the circuit court's conclusion that Brian made a free and voluntary decision as an adult not to have any contact with Calvin. Brian never made any attempt to establish contact with his father. After his high school graduation, Brian made no effort to contact Calvin while on vacation in Florida. Therefore,

Calvin could not make any credible claim for expectation of support from Brian.

[¶ 17.] Court's sitting in equity have wide latitude, and "[w]e will not bind a trial court to a strict mathematical formula" in determining property divisions. *Pellegrin v. Pellegrin*, 1998 SD 19, ¶ 23, 574 N.W.2d 644, 649 (citing *Bennett v. Bennett*, 516 N.W.2d 672, 675 (S.D.1994)). The circuit court did not abuse its discretion in largely basing its division of the settlement on the relative expectations of support Joan and Calvin could claim.

[¶ 18.] In addition, as the circuit court recognized, in order to expect equity, a party must do equity. *See Talley v. Talley*, 1997 SD 88, ¶ 29, 566 N.W.2d 846, 852. The circuit court found that Calvin abandoned his son, and the record strongly suggests this finding is not clearly erroneous. Despite having the intellectual and financial ability to contact Brian after he moved to South Dakota, Calvin made no effort outside of sending six cards, four of which were returned. Calvin did not attempt to establish a meaningful relationship while Brian lived, and he may not do so in Brian's death.

[¶ 19.] Finally, Calvin argues that under South Dakota intestacy statutes he is entitled to half of Brian's estate. Indeed, where a decedent has no children, SDCL 29A–2–103(2) divides the decedent's estate equally between the decedent's parents. This case, however, involves a wrongful death settlement specifically addressed by South Dakota's wrongful death statutes. *See* SDCL ch. 21–5 *et seq.* In fact, SDCL 21–5–8 specifically mandates that a wrongful death settlement be apportioned among the beneficiaries "as shall be fair and equitable." As noted previously, we believe the circuit court did not abuse its discretion in applying these statutes to its equitable division of Brian's wrongful death settlement.

[¶ 20.] For the above reasons, we believe the circuit court did not abuse its discretion in awarding Joan $54,956.81 and Calvin $1 of the wrongful death settlement.

[¶ 21.] Affirmed.

[¶ 22.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.