2004 SD 118

**ESTATE OF Edna Jane HOWE.**

**Nos. 22901, 22917, 22957, 22983.**

Supreme Court of South Dakota.

Argued March 22, 2004.

Decided Oct. 20, 2004.

Candi Thomson and Keith R. Smit of Morman Law Firm, Sturgis, South Dakota, Attorneys for appellant Randolph Howe.

Jeff Adel and Casey N. Bridgman of Bridgman and Adel, Wessington Springs, South Dakota, Attorney for appellant Lance Howe.

Rick Johnson and Sandy Steffen of Johnson, Eklund, Nicholson & Peterson, Gregory, South Dakota, Attorneys for appellee Michael Howe.

JENSEN, Circuit Judge.

[¶ 1.] Randolph Howe (Randolph) and Lance Howe (Lance) each appeal a trial court order distributing the proceeds of a wrongful death and survival tort action arising from the death of Edna Jane Howe (Edna) on March 29, 1999. Both also appeal a subsequent trial court order setting the amount of a supersedeas bond at $2,250,000. All four appeals are consolidated in this opinion. For the reasons set forth herein, we affirm in part and reverse and remand in part.

## FACTS AND PROCEDURE

[¶ 2.] Edna and her husband Richard Howe (Richard) had three children during their marriage, Randolph, Andrew Howe (Andrew), and Michael Howe (Michael). Edna's husband and her son, Andrew, both predeceased her. Andrew had three children, all of whom were living at the time of Edna's death. Lance is one of Andrew's children.

[¶ 3.] Randolph and Michael were born in 1940 and 1947, respectively, and were

raised by their parents in Pierre, South Dakota. Both Randolph and Michael appear to have had a good relationship with their parents while they were growing up and for much of their adult lives. However, problems developed in the family relationship a few years before Edna's death.

[¶ 4.] In July 1991 Edna gave a joint power of attorney to Michael and Randolph. Edna also deeded them her home in Pierre. In September 1991 Edna suffered an illness that required her hospitalization in Pierre. After a brief stay, Michael and Randolph placed Edna in a local retirement home. Michael and Randolph both spent a considerable amount of time with her while she recovered. Believing that Edna would not be able to return to her home, Michael and Randolph sold it. During this time, Randolph's wife, Dottie, handled Edna's financial affairs and sold some of her personal effects. Randolph and Dottie also took possession of some of Edna's personal property.

[¶ 5.] In March 1992 Edna hired an attorney to help her regain control of her financial affairs. Though Edna had shown mild signs of dementia, her attorney was satisfied at the time that she was competent. Edna's attorney wrote several letters in an effort to help her regain control of her financial affairs. This included a letter to Dottie requesting the return of Edna's financial papers and personal property and the revocation of any powers of attorney that Edna may have signed. These communications enraged Randolph and he became extremely upset while meeting with Edna's attorney, telling him not to stick his nose in where it did not belong.

[¶ 6.] In April 1992 Michael received a phone call informing him that Edna's property would be hauled to the dump if it was not retrieved from Randolph's home by five o'clock that day. Michael promptly traveled from Rapid City to Randolph's home to pick up the property including clothing, furniture and financial records. He found the items placed outside the front of Randolph's home. While Michael was loading the property, Randolph came out and told him, "I never want to see you or that old woman or talk to you again."

[¶ 7.] The evidence shows that Randolph became totally estranged from his mother after April 1992. At Edna's request, Michael moved her to Rapid City at that time. Edna continued to live in Rapid City until her death in 1999. Edna alternated between residing at Michael's home or at nursing/retirement homes. The trial court found that after April 1992 Randolph never saw or spoke to his brother or his mother again during her lifetime.

[¶ 8.] Lance grew up in Pierre while his grandmother, Edna, was living there. He had a close relationship with Edna and spent a considerable amount of time with her while growing up. After reaching adulthood, Lance continued to maintain a relationship with Edna until her death.

[¶ 9.] In August 1992 Edna executed a will leaving her entire estate to Michael with the exceptions of a bequest of furniture to a granddaughter and a $2,000 bequest to Randolph. This was a change from a prior will she executed in January 1992 dividing her property equally between Randolph, Michael and Andrew's children. The will was admitted to probate on December 24, 2001, and was not contested by Randolph or Lance.

[¶ 10.] Edna died at a nursing home in March 1999. Michael hired an attorney to look into a wrongful death action regarding her death. The attorney agreed to pursue the claim on a contingency fee, but advised Michael that he would ultimately be responsible for the costs in the case, which could be as much as $50,000. Mi-

chael moved for appointment as special administrator for Edna's estate and filed an action against the nursing home and a bed manufacturer. The complaint sought survival damages for Edna's estate and wrongful death damages for the "pecuniary injury and loss suffered by the plaintiff (Michael Howe)."[1] Michael testified that he did not include Randolph in the wrongful death litigation and that he never intended to prosecute a claim to recover anything for Randolph. Michael expressed this intention to Lance at the time the tort claim was pending, stating that Randolph "was not getting a dime."

[¶ 11.] The tort claim against the nursing home was settled in the fall of 2001. The settlement proceeds were used to pay costs, attorneys' fees and expenses, and to reimburse Michael for out-of-pocket expenses. Additionally, Michael placed $50,000 of the proceeds in reserve for the ongoing litigation with the bed manufacturer. The balance of the settlement, except the $2,000 bequest to Randolph, was distributed to Michael without objection from Randolph or Lance.

[¶ 12.] In January 2002 Michael gave Lance a check for $10,000 which was a part of the settlement proceeds from the nursing home. Michael told Lance that there had been a settlement on Edna's case and that there would likely be an additional settlement in the six figure range for Lance and the other grandchildren. He also told Lance that it would be enough money to change his life and that he should consider hiring a financial advis-or. Lance took the check to Randolph and offered to give him half of it. Although Randolph did not receive any of the money, Michael found out about the proposal and became upset. As a result, Michael decided not to give any more money to Lance.

[¶ 13.] While the tort claim was pending, one of the defendants filed a motion for summary judgment to exclude all grandchildren from the action. Lance did not receive notice of the motion and did not appear in opposition to it. Neither Michael nor the estate filed a brief in opposition to the exclusion of the grandchildren though they did orally resist the motion at the hearing. The court granted the summary judgment motion and excluded all grandchildren from the action.

[¶ 14.] The tort claim against the bed manufacturer was eventually settled. Michael petitioned the court to approve the settlement and allocate the proceeds between the survival action and the wrongful death action. Michael also petitioned the court to distribute all the proceeds of the wrongful death settlement to him after payment of expenses. Randolph and Lance objected to Michael's petition to distribute the proceeds, but agreed to a distribution to Michael of one-third of the net settlement proceeds.

[¶ 15.] Randolph and Lance appeal the trial court's order allocating the settlement proceeds between the survival action and the wrongful death action, as well as the order distributing all the wrongful death proceeds to Michael. Randolph and Lance

1. The attorney handling the tort claim testified that he conducted an investigation to identify all persons who would be able to establish a pecuniary loss arising from the death of Edna, although nearly all of the information came from Michael and he never spoke directly with Randolph to make that determination. He believed that Michael was the only child of Edna who suffered a pecuni-ary loss as a result of her death. He testified that none of the legal pleadings filed by Michael sought damages for any other person. The attorney also testified that Randolph, through his attorney, was not cooperative in scheduling his deposition or in being interviewed for the purpose of the wrongful death litigation.

sought to stay the trial court's order pending appeal. Following a hearing, the trial court ordered that Randolph and Lance post a bond in the total amount of $2,255,000 to stay execution of the order for distribution. The court ordered the bond to be posted within thirty days of the hearing or that the funds be distributed to Michael. Neither Randolph nor Lance posted the supersedeas bond ordered by the trial court and each appeal this latter order.

## STANDARD OF REVIEW

■■ [¶ 16.] We review the trial court's findings of fact under the clearly erroneous standard. *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25 (citing *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204). Under this standard, we reverse only when "we are left with a definite and firm conviction that a mistake has been made" after a thorough review of the evidence. *Id.* "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them. *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994) (citing *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421 (S.D.1980)). Conclusions of law are reviewed under a de novo standard, giving no deference to the trial court's conclusions of law. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771). Likewise, construing a statute entails answering a question of law; thus, we review the trial court's statutory interpretation de novo. *Esling v. Krambeck*, 2003 SD 59, ¶ 6, 663 N.W.2d 671, 675.

■■ [¶ 17.] We will not reverse a trial court's division of property "unless it clearly appears the trial court abused its discretion." *Divich v. Divich*, 2003 SD 73, ¶ 7, 665 N.W.2d 109, 112 (citing *Kanta v. Kanta*, 479 N.W.2d 505, 507 (S.D.1991)). "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.* (citing *Kanta*, 479 N.W.2d at 507; *Gross v. Gross*, 355 N.W.2d 4, 7 (S.D.1984); *Rykhus v. Rykhus*, 319 N.W.2d 167 (S.D.1982); *Herndon v. Herndon*, 305 N.W.2d 917 (S.D.1981); *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961)). This Court also reviews the trial court's determination setting the undertaking for a supersedeas bond under an abuse of discretion standard. *Landstrom v. Shaver*, 1996 SD 49, 550 N.W.2d 699, 704.

## ANALYSIS AND DECISION

### ISSUE ONE

[¶ 18.] **Whether the trial court abused its discretion in determining that Randolph was not entitled to receive any of the proceeds from the settlement of the wrongful death action?**

[¶ 19.] Randolph claims that the trial court erred in three respects in determining that he was not entitled to any of the proceeds from the wrongful death settlement. Initially, Randolph claims that it was error for the trial court to apply waiver and estoppel to bar his right to share in the settlement proceeds. He also contends that the trial court erred in determining that Michael pursued the wrongful death action for his own benefit and not for the benefit of any other party. Finally, Randolph argues that the trial court erred in denying his right to distribution of the settlement proceeds on the grounds that he suffered no pecuniary loss due to Edna's death and for failing to consider the extent of Michael's pecuniary injury.

[¶ 20.] An action for wrongful death in South Dakota is purely statutory. At common law, a claim for personal injuries expired upon the claimant's death. Therefore, a wrongful death action (either survival of decedent's tort claims or a new cause of action in favor of the beneficiaries) was unknown at common law. *Steckman v. Silver Moon, Inc.,* 77 S.D. 206, 209, 90 N.W.2d 170, 172 (1958).

[¶ 21.] SDCL ch. 21–5 sets forth the current statutory scheme for a wrongful death action. SDCL 21–5–5 provides:

> Every action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused; and it shall be brought in the name of the personal representative or regular or special administrator of the deceased person.[2]

The language of SDCL 21–5–5 is mandatory in two respects. First, the action *"shall* be for the exclusive benefit [of the statutory beneficiaries] ...." (emphasis added). Second, the action *"shall* be brought in the name of the personal representative or regular or special administrator ...." (emphasis added).

[¶ 22.] Michael moved for appointment as special administrator to pursue the claim arising from Edna's death. As special administrator he was obligated to pursue the wrongful death action on behalf of all the statutory beneficiaries named in

SDCL 21–5–5, including Randolph. We have held on previous occasions that "[a] personal representative acts in a fiduciary capacity on behalf of all parties who have interests in the estate including heirs and creditors. *Ward v. Lange,* 1996 SD 113, ¶ 15, 553 N.W.2d 246, 251 (citing *Matter of Estate of Pina,* 443 N.W.2d 627 (S.D. 1989)). "A personal representative is obligated to use the same care and skill in managing an estate that a reasonably prudent man would utilize in the management of his own affairs." *Id.* These obligations are no less applicable to a special administrator.

■ [¶ 23.] Michael asserts that he pursued the wrongful death action solely for his own benefit after the attorney pursuing the claim concluded that only Michael had suffered pecuniary damages.[3] This course of action was contrary to Michael's obligations as a special administrator. The responsibility to determine pecuniary loss and apportionment of damages is not for the special administrator, but for the jury or the court as may be appropriate under SDCL 21–5–7 and 21–5–8. By voluntarily placing himself in a fiduciary position, Michael's task was to vigorously pursue the wrongful death claim for the benefit of all the statutory beneficiaries, not to predetermine Randolph's claim. If Michael was unwilling to pursue the wrongful death claim for Randolph as a statutory beneficiary, he should not have

---

2. The currently codified version of SDCL 21–5–5 (2004) substitutes the term "personal representative" for "executor" per the instructions of the legislature at 1995 SD Sess.L ch. 167, § 188. However, it also erroneously omits an "or" between the terms "regular" and "special administrator." *See* 1967 SD Sess.L ch. 149. Our quotation of the statute includes the omitted "or."

3. Considering Michael's expressed intention that Randolph not receive a dime of any settlement and the fact that the attorney handling the tort claim never spoke with Randolph, significant questions are raised about whether this investigation was full and fair. Further, Michael's execution of the settlement agreement extinguishing the claims of "all heirs, and beneficiaries, statutory or otherwise ..." belies his assertion that he pursued the claim solely for his own benefit.

requested appointment as a special administrator.

[¶ 24.] The record does support the trial court's finding that Randolph was not cooperative in pursuing the wrongful death action. Randolph did so at his own peril. However, there is no evidence that Randolph's failure to cooperate prejudiced the wrongful death action or reduced the settlement amount. A claim of waiver or estoppel must be accompanied by some prejudice. By accepting the role of special administrator, Michael had a duty to pursue a claim for Randolph, as a statutory beneficiary, even if Randolph made this job difficult.

[¶ 25.] Michael argues that Randolph could have maintained his own wrongful death action based upon *Sander v. Geib, Elston, Frost Professional Ass'n*, 506 N.W.2d 107, 127 (S.D.1993). The following language from *Sander* does seem to suggest that each statutory beneficiary could maintain a separate action for wrongful death under SDCL 21–5–5:

> Under the facts of this case, Kim's surviving husband and her surviving children could have each brought a separate wrongful death action, at a different time (within the statute of limitations). Each of these individuals would be entitled to his/her own $1 million cap on wrongful death damages from medical malpractice.

However, the question in *Sander* was whether each statutory beneficiary had a separate cause of action for wrongful death under SDCL 21–5–5 for purposes of determining the amount of the damages cap for medical malpractice actions under SDCL 21–3–11. *Sander* did not address the issue before this court of whether SDCL 21–5–5 requires that the personal representative or the regular or special administrator bring the wrongful death action. The plain language of the statute requires that the action be filed by the personal representative or the regular or special administrator. Thus, we clarify that the language in *Sander* should not be read to allow each statutory beneficiary under SDCL 21–5–5 to file their own action for wrongful death.

[¶ 26.] As special administrator of Edna Howe's estate, Michael had the sole authority to pursue the wrongful death action on behalf of all the statutory beneficiaries. Randolph, as a statutory beneficiary, was not required to participate in the wrongful death action in order to protect his interest in the proceeds. Once obtained, the proceeds of the settlement did not become an asset of the estate or the personal property of Michael. Instead, as special administrator, Michael obtained and held the wrongful death proceeds on behalf of all the statutory beneficiaries until the money could be apportioned by the court pursuant to terms of the wrongful death statutes. *See Douglas v. Holbert*, 335 Ark. 305, 983 S.W.2d 392, 393–97 (1998).

■ [¶ 27.] The trial court also relied upon the assertion that Randolph's failure to object to the proposed settlement defeated his claim. The petition seeking court approval of the final settlement made no claim that the proposed settlement was solely for Michael's benefit. In fact, the petition specifically represented that "a wrongful death claim ... exist[ed] in favor of the ... statutory beneficiaries ..." and requested court approval to settle all "claims whatsoever arising out of the injuries suffered by the death of Edna Jane Howe[.]" Absent from the petition was any suggestion that the settlement was exclusively for Michael's benefit or that Randolph was excluded from the settlement. Under those circumstances, Randolph did not waive any right to the settlement by failing to object to it.

[¶ 28.] For the reasons stated above, it was error for the trial court to exclude Randolph from making a claim on the settlement proceeds. However, the trial court stated that it would have denied Randolph's claim in any event because he suffered no pecuniary injury under SDCL 21–5–7. The trial court also noted that, even if Randolph had suffered pecuniary injury, his abandonment of his mother "would have justified the court in determining in fairness and equity that he should not recover any damages ..." under SDCL 21–5–8. This Court must also determine whether the trial court's alternate basis for denying Randolph's claim was an abuse of discretion.

[¶ 29.] After determining the statutory beneficiaries under SDCL 21–5–5, the starting place for apportionment of wrongful death proceeds in the event of settlement is SDCL 21–5–8. SDCL 21–5–8 provides in part, "The amount received by such personal representative ... shall be apportioned among the beneficiaries ... in such manner as shall be fair and equitable, having reference to the age and condition of such beneficiaries." The statute creates a mechanism to apportion wrongful death damages among the statutory beneficiaries apart from the dictates of any will or statutory intestate succession.

[¶ 30.] In its apportionment, it was proper for the trial court to consider pecuniary injury as this court recently held in *In re Estate of Watson*, 2003 SD 142, 673 N.W.2d 60. Estate of Watson, decided after the trial court's decision here, involved the distribution of a wrongful death settlement under SDCL 21–5–8 to the parents of an adult child killed in an accident. This Court upheld the trial court's distribution of $54,956.81 of the net settlement proceeds to the mother and $1 to the father where the father had abandoned the child for more than half of the child's life

and the evidence showed that, as an adult, the child lived with the mother and supported her financially. *Id.* We stated that "[a]lthough the present controversy involves a fair and equitable division of a wrongful death settlement, it was entirely proper for the circuit court to look to the South Dakota wrongful death statutory scheme for guidance." *Id.* at ¶ 16, 673 N.W.2d at 63. We went on to state that the trial court may properly consider the pecuniary injury to each statutory beneficiary even though not specifically referenced in SDCL 21–5–8.

[¶ 31.] The trial court considered the extent of Randolph's pecuniary injury. However, the court should also have considered the extent of the pecuniary injury to Michael in relationship to the total settlement. Pecuniary injury has been said to be the foundation of a wrongful death action. *See Luider v. Skaggs*, 693 N.E.2d 593 (Ind.Ct.App.1998); *James v. Middletown Community Health Center, Inc.*, 278 A.D.2d 280, 718 N.Y.S.2d 358 (N.Y.App. Div.2000); *Com. v. Opperman*, 780 A.2d 714 (Pa.Super.Ct.2001), *appeal denied*, 568 Pa. 617, 792 A.2d 1253 (2001). In *Zoss v. Dakota Truck Underwriters* we defined pecuniary injury as follows:

> [P]ecuniary injury encompasses more than strictly economic losses in that it includes "the loss of decedent's companionship and society as expressed by, but not limited to, the words 'advice,' 'assistance,' and 'protection,' but without consideration for the grief and mental anguish suffered by the beneficiaries because of the wrongful death."

1999 SD 37, ¶ 11, 590 N.W.2d 911, 913–14 (quoting *Sander*, 506 N.W.2d at 119, *Flagtwet v. Smith*, 367 N.W.2d 188, 191 (S.D. 1985)).

[¶ 32.] There was no evidence that Michael or Randolph suffered any economic loss as a result of Edna's death. There

was also no evidence that Michael or Randolph were financially dependent on their mother; nor were there any findings to that effect. Further, while Michael certainly suffered non-economic pecuniary loss with the death of his mother (in contrast with the trial court's finding as to Randolph), the extent of Michael's loss was reduced because of Edna's age and her infirmities. Non-economic pecuniary injury does not include the "grief and mental anguish" suffered because of the loss. Rather, the court must consider the "companionship and society" lost with the decedent's death. The record shows that Edna's health had seriously deteriorated over the last few years and particularly the last few months of her life. There was little evidence to show a significant loss of "companionship and society" by Michael because of Edna's mental and physical health at the time of her death. Further, the trial court failed to make any findings as to the extent of Michael's loss. Yet, under the trial court's order, Michael received a seven figure distribution after paying attorneys fees and expenses. The "fair and equitable" analysis under SDCL 21–5–8 requires that the trial court consider the pecuniary loss of both parties in relationship to the net amount recovered in the wrongful death action. Considering the settlement here, it may very well be the case that the amount recovered far exceeded the pecuniary loss to both Michael and Randolph.

[¶ 33.] The trial court's failure to consider the pecuniary injury to both parties requires that the case be remanded for the court to reconsider the distribution in this case. Moreover, the exclusion of Randolph from consideration as a beneficiary because of Michael's claim that the tort action was pursued only for Michael's benefit and because Randolph did not participate was error. Michael and Randolph should have started on equal footing as

statutory beneficiaries in considering the apportionment of the settlement under SDCL 21–5–8. While the "fair and equitable" language of SDCL 21–5–8 certainly allowed the trial court to consider other factors in the distribution, without the crucial determination of the extent of each person's pecuniary injury, the court was not in a position to make a proper distribution under the statute. For the reasons discussed herein, we hold that the trial court abused its discretion in the distribution of the wrongful death settlement proceeds.

[¶ 34.] On remand, the trial court must reconsider the distribution between Michael and Randolph in a manner consistent with this decision.

## ISSUE TWO

[¶ 35.] **Whether the trial court erred by allocating twenty percent of the proceeds to the survival action when the petition for distribution filed by the personal representative proposed that approximately three percent of the proceeds be allocated to the survival action?**

[¶ 36.] Randolph argues that the allocation of eighty percent of the proceeds to the wrongful death action and twenty percent to the survival action was error because Michael had originally petitioned to allocate only three percent to the survival action and the balance to the wrongful death action. Randolph argues that Michael presented the 80/20 proposal on the day of trial and that he was prejudiced by this late change.

[¶ 37.] Lance has not raised this issue on appeal and the record does not show that Randolph objected to the 80/20 allocation or otherwise argued that he was prejudiced by the proposed change

at the time of trial. Further, Randolph failed to present any evidence that this proposed allocation was improper. Accordingly, Randolph has failed to preserve error on this issue. "The burden of demanding a ruling rests upon the party desiring it. 'If a party permits the court to proceed to judgment without action upon his motion or objection, he will be held to have waived the right to have the motion or objection acted upon.'" *Jameson v. Jameson*, 1999 SD 129, ¶ 25, 600 N.W.2d 577, 583 (quoting *State v. Sickler*, 334 N.W.2d 677, 679 (S.D.1983); *American Fed. Sav. Loan Ass'n v. Kass*, 320 N.W.2d 800, 803 (S.D.1982)).

[¶ 38.] Even if the issue were properly preserved, Randolph has failed to show that the trial court abused its discretion in making the 80/20 allocation. We will not disturb the trial court's allocation of eighty percent of the settlement proceeds to the wrongful death action and twenty percent to the survival action.

## ISSUE THREE

[¶ 39.] **Whether Lance Howe was barred by SDCL 21–5–5 and SDCL 21–5–8 from sharing in the wrongful death proceeds recovered by the Estate of Edna Howe in the settlement of the wrongful death action?**

[¶ 40.] Lance claims that he was a beneficiary under the wrongful death statute through his father, Andrew, who predeceased Edna. Lance acknowledges that he was not a child under SDCL 21–5–5, but argues that the children of Edna's deceased son, Andrew, stepped into their father's shoes as child beneficiaries under the statute. He contends that the language of the statute did not require the children to be living and, thus he could make a claim to the settlement proceeds through his father.

[¶ 41.] Questions of statutory interpretation are reviewed by this Court de novo. *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611. The purpose of statutory construction is to interpret the true intention of the law, which is to be construed primarily from the plain meaning of the statute. *Appeal of AT & T Information Systems*, 405 N.W.2d 24, 28 (S.D.1987). *See also Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citing *U.S. West Communications, Inc. v. Public Utilities Comm'n*, 505 N.W.2d 115, 122–23 (S.D.1993)). The intent of a statute is determined from what the legislature said, rather than what the courts think it should have said. *Martinmaas*, 2000 SD 85 at ¶ 49, 612 N.W.2d at 611 (citing *Moss, supra*). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed. *Id.* '[R]esorting to legislative history is justified only when legislation is ambiguous, or its literal meaning is absurd or unreasonable. Absent these circumstances, we must give legislation its plain meaning. We cannot amend to produce or avoid a particular result.'" *Slama v. Landmann Jungman Hospital*, 2002 SD 151, ¶ 7, 654 N.W.2d 826, 828 (quoting *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984)).

[¶ 42.] SDCL 21–5–5 provides that "[e]very action for wrongful death *shall be for the exclusive benefit of the* wife or husband and *children, or if there be neither of them*, then of the parents and next of kin of the person whose death shall be so caused ...." (emphasis added). The initial exclusive statutory beneficiaries under SDCL 21–5–5 are the decedent's spouse *and* children. The statute does not provide for further lineal descent unless there be neither spouse nor children.

Then, and only then, may parents or next of kin assert a claim as a statutory beneficiary.

[¶ 43.] "The word 'children' is normally used to denote issue of the first generation only." Black's Law Dictionary, 254 (8th ed. 2004)(quoting Restatement of Property § 267 cmt. c (1940)). Further, while not a part of the wrongful death statutory scheme, the legislature has defined "child" in the Uniform Probate Code as excluding "a person who is only . . . a grandchild[.]" SDCL 29A–1–201(6). The meaning of the term "children" in SDCL 21–5–5 is unambiguous and does not include Lance as a grandchild.

[¶ 44.] Lance argues that, because SDCL 21–5–5 does not state *surviving* spouse and children, he stepped into the shoes of his deceased father as a statutory beneficiary. However, the language of the statute states that a wrongful death action is for the "exclusive benefit" of the spouse and children, or if "there be neither of them," then to the parents and next of kin. Thus, as long as there is a spouse or there are children, they are the *exclusive* beneficiaries of the wrongful death action. The use of the term "exclusive" dictates that no other party may share in the wrongful death claim. Further, the statute makes no suggestion that, if one or more of these exclusive beneficiaries are deceased, anyone other than the remaining exclusive beneficiaries may share in the wrongful death claim. Lance does not argue that the absence of the term "surviving" makes the statute ambiguous and clearly it does not. Because the statute is unambiguous, we confine ourselves to its plain language.

[¶ 45.] SDCL 21–5–5 is clear on its face as to who is included as a statutory beneficiary. Lance's arguments would require this Court to step far beyond the clear text of the statute. Lance assumes, without any statutory language to support the as-

sumption, that a grandchild is the proper party to step into the shoes of a predeceased child under SDCL 21–5–5. Under Lance's statutory interpretation, if Andrew had surviving children from another marriage at the time of Edna's death, they would also be able to make claims as statutory beneficiaries under SDCL 21–5–5. Further, under Lance's interpretation, Edna's predeceased husband Richard would also still be a beneficiary under the statute. Thus, Richard's lineal descendents, if different than Edna's, would also have the ability to assert beneficiary status. Lance's reading of SDCL 21–5–5 would expand the class of "exclusive" beneficiaries far beyond those contemplated in the statute.

[¶ 46.] Lance's interpretation of SDCL 21–5–5 also affords a priority to grandchildren that is unsupported by the plain language of the statute. Lance's interpretation would allow grandchildren to jump ahead of other second tier beneficiaries and share with the exclusive beneficiaries. Further, under Lance's interpretation, a scenario could develop where a spouse and children have all predeceased a decedent, allowing the grandchildren to claim the wrongful death proceeds to the exclusion of all other second tier beneficiaries. There is nothing in the statute to suggest that the legislature intended to give such priority to grandchildren.

[¶ 47.] Lance's statutory interpretation requires that we make assumptions about SDCL 21–5–5 that are neither expressed nor warranted under the plain language of the statute. Lance cites to the legislative history of the statute which is not particularly persuasive in terms of supporting his interpretation. Moreover, it is unnecessary for this Court to consider the legislative history because the text of the statute is clear and unambiguous

[¶ 48.] We acknowledge that Lance may very well have suffered pecuniary loss as a result of Edna's death and it is tempting to find a way to compensate that loss. However, the wrongful death statute is the exclusive remedy and the legislature has the authority to establish the beneficiaries under the statute. There is no doubt that persons other than those specifically listed in SDCL 21–5–5 may suffer pecuniary loss as a result of a person's wrongful death in a given case, but this Court must limit the beneficiaries to those enumerated in the statute.

[¶ 49.] Having concluded that Lance was not a beneficiary under SDCL 21–5–5, we need not address the other issues he raises. We affirm the trial court's determination that Lance was not a wrongful death beneficiary under SDCL 21–5–5.

## ISSUE FOUR

[¶ 50.] **Whether the trial court erred by ordering Randolph Howe and Lance Howe to post a supersedeas bond in the total amount of $2,255,000.**

[¶ 51.] Randolph and Lance also appeal from the trial court's order establishing a supersedeas bond in this case. The trial court entered an order requiring Randolph and Lance to post a bond in the amount of $2,255,000 in order to stay distribution of the settlement proceeds to Michael pending the appeal. The order provided for a default bond in the amount of $2,050,000 payable to the Estate and a supersedeas bond payable to Michael Howe in the amount of $205,000. From the transcript of the bond hearing, the trial court's apparent rationale for establishing the "default bond" was to protect the remaining settlement proceeds being held in the trust account of the estate's attorney. The reason for the "supersedeas bond" was to provide for one year of interest on the undistributed settlement

proceeds at the statutory judgment interest rate.

[¶ 52.] Michael initially argues that the issue is moot because the funds have been distributed consistent with the trial court's order. This Court has held that: "[A]n appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *State ex rel. Johnson v. Mathis Implement, Inc.*, 325 N.W.2d 58, 59 (S.D. 1982) (quoting *Matter of Silver King Mines, Permit EX–5*, 315 N.W.2d 689, 690 (S.D.1982); *Rapid City Journal v. Circuit Court, Etc.*, 283 N.W.2d 563, 565 (S.D. 1979)). In addition, this Court has held that:

> Before an appeal will be dismissed on the grounds that the questions involved have become moot it must appear clearly and convincingly that the actual controversy has ceased; it must appear that the only judgment which could be entered would be ineffectual for any purpose and would be an idle act concerning rights involved in the action.

*State v. Shape*, 517 N.W.2d 650, 656–57 (S.D.1994) (quoting *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569, 572 (S.D.1991)).

[¶ 53.] In this case, there has not been a change of circumstances or an occurrence of an event by which the actual controversy has ceased nor is it impossible for this Court to grant effectual relief; therefore, this issue is not moot. *See Sjomeling v. Sjomeling*, 472 N.W.2d 487 (S.D. 1991). In the event of a reversal or remand, this Court or the trial court may order that the funds at issue be re-deposited in the estate attorney's trust account. Under these circumstances, the bond issue would only be moot if Randolph and

Lance's initial appeals were both affirmed. Based upon this Court's disposition of those appeals, the issue is moot as to Lance, but not as to Randolph.

[¶54.] An appellant must execute a supersedeas bond in order to stay enforcement of a judgment or order pending the appeal of that judgment or order. SDCL 15–26A–25 provides that: "An appeal from a judgment or order shall not stay enforcement of proceedings in the circuit court except as provided in § 15–6–62 unless the appellant executes a supersedeas bond in the amount and form approved by the circuit court or otherwise complies with the provisions of this rule." We have previously stated that a supersedeas bond is intended to protect the appellee and provide certainty that a judgment can be satisfied if affirmed on appeal. *Landstrom v. Shaver*, 1996 SD 49, ¶17, 550 N.W.2d 699, 705.

[¶55.] The parties disagree as to whether SDCL 15–26A–26[4] was applicable in establishing the amount of the bond in this case. The statute provides specific direction on the amount of a bond where the appeal is from a judgment directing the payment of money. However, these appeals are not from a judgment directing the payment of money as the money was already paid in settlement of the underlying tort claims and was only waiting to be distributed. Rather, these appeals are from the trial court's determination of how that money should be distributed. As recognized by the trial court, the appropriate statute for consideration was SDCL 15–26A–31.

[¶56.] SDCL 15–26A–31 provides, "If the appeal is from any judgment or order not expressly covered by this chapter the

bond required by § 15–26A–25 shall be conditioned in such amount and form as the circuit court directs." This statute provides the trial court with discretion to set the amount and form of the bond, but such discretion is not unfettered. The question for this Court is whether the trial court abused its discretion in setting the amount and form of the bond under SDCL 15–26A–31.

[¶57.] Michael argues that the bond established by the trial court was appropriate because the court properly considered the fact that Randolph or Lance's appeal could breach confidentiality obligations in the tort claim settlement agreement and jeopardize the settlement proceeds. This is not a proper basis to require a supersedeas or default bond under SDCL 15–26A–31. Under Michael's premise, the supersedeas bond would be intended to protect against the appellant taking some wrongful action unrelated to the judgment that could jeopardize the judgment. This stands in contrast with the actual purpose of a supersedeas bond which is to secure the particular object of a judgment. In this case, the object of the judgment, distributing the settlement proceeds, was secured by the deposit of the funds into the trust account for the estate. A trial court order requiring the funds to be placed on deposit in an interest bearing account would have been sufficient to secure the judgment.

[¶58.] If Randolph or Lance breach obligations of confidentiality in their appeals there are remedies available, but a supersedeas bond cannot be expanded for such a purpose. A supersedeas bond is not intended to protect the appellee from

---

4. SDCL 15–26A–26 provides in part, "If the appeal is from a judgment directing the payment of money, the conditions of the bond required by § 15–26A–25 *shall be the payment* *of the judgment* or that part of the judgment which is affirmed together with interest thereon from the date of the judgment." (emphasis added).

every possible future event or harm that occurs during an appeal. The trial court abused its discretion in ordering Randolph and Lance to post this default bond.

[¶ 59.] The trial court also ordered the posting of a supersedeas bond in the amount of $205,000 in favor of Michael. The court appears to have required this bond to protect Michael from the loss of interest while the funds remained in the trust account during the appeal process. Randolph and Lance point out that the money was in an interest bearing account, but there is nothing in the record indicating the amount of interest. More problematic is how the bond would be used at the conclusion of the appeals. Even if Randolph and Lance were unsuccessful, there is no legal basis to require them to pay interest for any delay in distribution resulting from the appeals. Every estate proceeding requires time to distribute proceeds to the beneficiaries, but this does not entitle the beneficiaries to interest other than that earned while the proceeds remain in the estate. This is true even when there is a contest as to the distribution of all or a portion of the assets or proceeds. Accordingly, the supersedeas bond for interest was unnecessary.

[¶ 60.] There has been no other basis asserted to support the supersedeas bond ordered by the trial court. Therefore, we hold that the court abused its discretion in ordering the entire supersedeas bond amount of $2,255,000. Since the case is remanded to the trial court as set forth above, the court should order on remand that Michael re-deposit the amount distributed to him under the court's original order, or it should enter such other order as it deems appropriate to ensure that any distribution to Randolph is paid. While such an order may place Michael in a difficult position, that is the risk of immediate execution on an order before the time for appeal has passed or while the appeal is pending. *See, Wasserburger v. Consolidated Management Corporation,* 459 N.W.2d 561 (S.D.1990).

[¶ 61.] Affirmed in part, reversed in part and remanded.

[¶ 62.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 63.] SABERS and MEIERHENRY, Justices, concur in part and dissent in part.

[¶ 64.] JENSEN, Circuit Judge, for ZINTER, Justice, disqualified.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 65.] I concur in all respects except that I dissent on issue 3.

[¶ 66.] This is a lawsuit conceived in greed and executed with almost robot-like precision. It was from start to finish the pinnacle of selfishness and greed, the likes of which the world would do better without.

[¶ 67.] Michael, as personal representative for the wrongful death heirs of the estate of Edna Howe, had a fiduciary duty to do right by them. He breached this obligation at every opportunity. Michael had a fiduciary obligation to include, not exclude, all the wrongful death heirs of the Edna Howe estate in the proceedings. This includes not only Randolph but Lance Howe and his siblings, the children of Andrew Howe, deceased.

[¶ 68.] Michael's breach of his fiduciary duty to Lance and his siblings is exemplified in the way the estate handled the motion by Hill–Rom for summary judgment, in the underlying wrongful death action, to exclude the heirs of Andrew Howe from the wrongful death action. Neither Lance nor either of his siblings were given notice of this summary judg-

ment motion, or notice that a hearing would be held on the motion. Moreover, while Hill–Rom filed a brief in support of its summary judgment motion, the estate, controlled by Michael as the appointed Personal Representative, failed to file a brief in opposition to it on behalf of Lance and his siblings. Furthermore, after the trial court granted Hill–Rom's summary judgment motion, neither Lance nor his siblings were given any notice of same. By preventing Lance and his sisters any opportunity to be heard, Michael breached his fiduciary duty towards them as wrongful death heirs to Edna Howe's estate.

[¶ 69.] The trial court's reasoning in denying Lance's claim to a share of the proceeds from the wrongful death action is also flawed. The trial court concluded that SDCL 21–5–5 makes children beneficiaries in a wrongful death action only if they survive the decedent. Through this interpretation, children of a predeceased child would not be beneficiaries. In affirming the trial court's interpretation of SDCL 21–5–5, the majority opinion glosses over the purpose and history of the wrongful death statute, and instead grounds its rationale in its determination that the language of the statute is unambiguous and should be interpreted according to its plain meaning. We should not be so quick to ignore the reasons the wrongful death statute was enacted.

[¶ 70.] South Dakota's first wrongful death statute was enacted in 1887, two years before the state came into existence. This statute held that in the case of a wrongful death, "the widow, heir or personal representatives of the deceased shall have the right to sue." Chapter 33, § 5499, Compiled Laws of Dakota, 939 (1887). In 1900, the South Dakota Supreme Court dealt with the issue of who is considered an "heir" under the statute. *Lintz v. Holy Terror Mining Co.*, 13 S.D.

489, 83 N.W. 570 (1900). This case involved a man who had never been married and had no children. The Court held:

At common law a person born or begotten in lawful wedlock is an heir, and to effectuate the intention of the maker of an instrument courts have frequently held that the term was used to denote *heirs of the body, or issue.* [citations omitted]. There is no reason why the same rule of construction should not be invoked to obtain the object of the legislature.

*Lintz,* 13 S.D. 489, 83 N.W. at 571 (emphasis added). Although the question of grandchildren did not arise in this case, by stating that recovery could be had by "heirs of the body, or issue," the Court implied that grandchildren would have been allowed to recover under the 1887 statute.

[¶ 71.] In 1909, the South Dakota legislature decided it would be unfair that a wrongdoer would be able to escape liability for his acts merely because the deceased was unmarried and did not have any children. Therefore, it modified the statute, which provides in pertinent part:

Every action for wrongful death shall be for the exclusive benefit of the wife or husband and children, or if there be neither of them, then of the parents and next of kin of the person whose death shall be so caused.

S.B. 303, S.L. Chapter 301 (later codified as SDC Section 37.2203). Since then the statute has been codified as SDCL 21–5–5, and the pertinent part of this wrongful death statute has not changed since 1909. Given this history, it is clear that this statute was not intended to limit recovery in a wrongful death action by excluding lineal descendants.

[¶ 72.] It is significant to note that the statute does not say "wife or husband and *surviving* children." It says "wife or hus-

band and children." Had the legislature intended to say surviving children, it could easily have done so. *See* SDCL 21–5–5; *see also Argo Oil Corp. v. Lathrop*, 76 S.D. 70, 74, 72 N.W.2d 431, 434 (1955) (stating that "[t]he intention of the Legislature is to be ascertained primarily from the language used in the statute, with the aid of the canons of construction"). However, it did not. The logical interpretation of this statute is that it is for the benefit of the wife or husband and children, which includes children of deceased children. Therefore, when a child predeceases the decedent, the children of that predeceased child, as lineal descendants, become beneficiaries in his place.

[¶ 73.] In addition to the purpose and history of the statute, public policy controls the definition of children in SDCL 21–5–5; *i.e.*, South Dakota's public policy regarding children as heirs of their parents' estate. SDCL 29A–2–302 provides that:

A child born to or adopted by the testator after the execution of the will who is neither mentioned nor provided for in the will is entitled to receive a share in the estate. . . .

Therefore, "omitted children" have a statutory right to a share of their parents' estate.

[¶ 74.] In the situation where the parent dies intestate, state law mandates that:

Any part of the intestate estate not passing to the decedent's surviving spouse . . . passes in the following order to the individuals designated below who survive the decedent:

(1) To the decedent's descendents by representation;

. . . .

SDCL 29A–2–103. Furthermore, SDCL 29A–2–603(a) addresses the situation where an individual named in a will dies before the testator:

(a) If an individual named as a devisee in a will dies before the will was executed, or dies after the will was executed and before the testator, the devise fails unless (i) the devisee is a grandparent, a descendant of a grandparent, a stepchild, or a descendant of the stepchild of the testator and (ii) the devisee left descendants who survive the testator. Those descendants take by representation the property to which the devisee would have been entitled had the devisee survived the testator.

. . . .

SDCL 29A–2–603(a). Given the importance that these statutes place on a child's right to take under their deceased parents' estates, it is clear that the public policy in South Dakota should control the definition of children in the wrongful death statute. Therefore, this established public policy requires the conclusion that when a child predeceases the decedent, the children of that predeceased child, as lineal descendants, become beneficiaries in his place.

[¶ 75.] Despite the definition of "child" as excluding "grandchild" under the Uniform Probate Code (§ 29A–1–201(6)) the public policy of this state is to require a parent to intentionally omit a child or issue of a deceased child. Therefore, the children or issue of a deceased child (a grandchild) should not be excluded without expressed intent when death is by accident. In other words, since one must intentionally omit a child or the issue of a deceased child when making a will, public policy does not permit an unintentional omission in the case of property passing without a will.

[¶ 76.] Given the purpose and history of the statute, along with this state's strong public policy granting substantive rights to the parent-child relationship, it is

clear that Lance and his two siblings are wrongful death beneficiaries under SDCL 21–5–5.

[¶ 77.] We should reverse and remand issue 3 for a determination of a fair and equitable share for Lance and his sisters, based on all factors, including a reasonable expectation of support[5] "having reference to [their] age and condition" under SDCL 21–5–8.

MEIERHENRY, Justice (concurring in part and dissenting in part).

[¶ 78.] I concur with the majority opinion except for issue 3. I agree with Justice Sabers' analysis and would also hold that Lance and his two siblings are wrongful death beneficiaries under SDCL 21–5–5.

---

5. Although a reasonable expectation of support is only one factor in determining a fair and equitable share, it is significant here because, for the most part, none of the heirs had any expectation of support because Edna had no money or property prior to her injury causing her death. All she had was a chose in action, a disputed tort claim. Prior to that point, neither Michael, Randolph, Lance nor his sisters had any significant expectation of support from their mother/grandmother.